JOHN J. MOLONEY *vs.* SELECTMEN OF MILFORD & another.

Worcester.    September 21, 1925. — October 14, 1925.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Statute*, Acceptance by town. *Municipal Corporations*, Town meeting: vote accepting statute, recount; Officers and agents. *Election*, Recount. *Police*. *Civil Service*. *Mandamus*.

G. L. c. 54, § 104, applies only to compulsory statutes or questions which by mandate of the Legislature must be submitted to popular vote, and does not apply to optional or permissive statutes or questions such as are submitted for acceptance by a city or town solely by reason of the voluntary action of an appropriate officer, to a city council by proposal of some member and to a town meeting simply by being inserted in the warrant on request of voters or by the discretion of the selectmen.

A town, which did not vote by precincts, legally accepted the provisions of G. L. c. 31, §§ 48, 49, if it did so by vote at an annual town meeting under an appropriate article in the warrant, by voice vote and also by a vote by show of hands, counted by tellers appointed for the purpose.

A town, which never had accepted the provisions of G. L. c. 41, § 97, but had accepted the provisions of G. L. c. 31, §§ 48, 49, adopted by-laws, providing that the selectmen should annually appoint a chief of police

at a fixed salary and empowering the selectmen to make such rules and regulations "for the government and discipline of the Police Department as they may from time to time deem necessary"; and, as a matter of custom, the selectmen annually appointed from thirty to thirty-five police officers, and, through assignment by the chief of police, regular routes, stated periods of service and specified compensation were fixed for such officers. *Held*, that this arrangement constituted a "regular or permanent police . . . force" and a chief of police within the terms of the civil service law, G. L. c. 31, §§ 48, 49.

There is no provision that town officers declared elected according to law shall suspend their functions pending a recount.

At an annual town meeting, three selectmen were to be chosen. Immediately upon the announcement of the count by the tellers, the moderator, under G. L. c. 39, § 15, announced the result as stated by them, and the selectmen elect accepted their election and took the oath of office. Notice was forthwith given orally that a petition for a recount would be filed, and such petition was filed. It was a custom in the town for the selectmen to meet and organize immediately after the election. They did so, although hearing of the pending recount, and elected a chief of police. The recount showed that one of those, who had been announced by the tellers as being elected, had not been elected. The new board then organized, and, without complying with the requirements of the civil service law, voted to remove the chief of police formerly elected, and he by a petition for a writ of mandamus sought reinstatement. *Held*, that the petitioner's election was legal, having been accomplished by a board which was competent to act pending the result of the recount, and that he had not been removed lawfully.

PETITION, filed in the Supreme Judicial Court for the county of Worcester on March 14, 1925, for a writ of mandamus directing the board of selectmen of the town of Milford to reinstate the petitioner as chief of police.

The petition was heard on an agreed statement of facts by *Braley*, J. Material facts are described in the opinion. The single justice was of opinion that the writ should issue but, at the request of the respondents, reported the case to the full court for determination.

The case was submitted on briefs.

*J. E. Crowley & A. B. Cenedella*, for the respondents.

*W. A. Murray, J. C. Lynch, & J. E. Swift*, for the petitioner.

RUGG, C.J. The petitioner seeks, by this petition for a writ of mandamus, to be reinstated as chief of police of the town of Milford. The respondent selectmen passed a vote removing him from office, refused to state reasons in writing

therefor or to grant him a public hearing, and appointed the respondent O'Brien chief of police in his place.

The first point to be decided is whether the town of Milford legally accepted §§ 48 and 49 of G. L. c. 31, so as to make applicable to its police force the civil service law. Appropriate articles were in the warrant for the annual town meeting of 1925, and by voice vote and also by vote by show of hands counted by tellers appointed for the purpose, those sections were adopted. The record of the town clerk shows this. The town of Milford does not vote by precincts but official ballots are used for the election of town officers. The respondents contend that votes for such acceptance, in order to be valid, must be by ballot and not otherwise. The relevant statutes are G. L. c. 4, § 4, to the effect that "Wherever it is provided that a statute shall take effect upon its acceptance by a city or town, such acceptance shall, except as otherwise provided in such statute, be, in a city, by vote of the city council or, in a town, by vote of the inhabitants thereof at a town meeting," and G. L. c. 54, § 104, to the effect that "The blank forms and apparatus provided by the State secretary shall be used in . . . taking the vote upon any proposed amendment to the Constitution, upon any law or proposed law submitted to the voters by referendum or initiative petition, upon the question of granting licenses for the sale of certain non-intoxicating beverages . . . , and upon any other question submitted by statute to the voters of any senatorial or representative district, or of any city or town in which official ballots are used."

These two sections according to familiar rules of statutory construction must, if reasonably possible, be interpreted so as to be harmonious and not contradictory, and all the words of each given some practical effect. It is plain that G. L. c. 4, § 4, applies equally to cities and towns. It contains no requirement that the vote be by ballot. According to its terms, the vote might be by voice or by show of hands, as the town meeting may determine. It carries no implication that such vote by the city council be by any other than the common method. No provision whatever is made for a

vote by the inhabitants in a city. The vote must be by the city council alone. The terms of G. L. c. 54, § 104, are equally applicable to cities and to towns in which official ballots are used. The official ballot is used in elections in all cities. There is no provision of law whereby an effective popular vote in cities can be taken except by ballot. If the construction contended for by the respondents were to be adopted, the provision of G. L. c. 4, § 4, for acceptance of a statute by a city council would be ineffective.

The right interpretation of G. L. c. 54, § 104, is that it applies only to compulsory statutes or questions, which by mandate of the Legislature must be submitted to popular vote, and does not apply to optional or permissive statutes or questions such as are submitted for acceptance by a city or town solely by reason of the voluntary action of an appropriate officer, to a city council by proposal of some member and to a town meeting simply by being inserted in the warrant on request of voters or by the discretion of the selectmen. This construction is confirmed by provisions of other statutes in terms authorizing acceptance by a city council or by a town in town meeting. G. L. c. 40, § 13; c. 41, § 82. If any other interpretation were given, some permissive acts, which may be accepted at any town meeting, could in fact be accepted only at the annual meeting where alone official ballots are used. G. L. c. 40, §§ 7, 11, 38, 44; c. 41, § 25. By G. L. c. 41, § 103, permission is granted to cities and towns to accept its terms requiring the establishment of a purchasing department; but by the following § 104 the city council with approval by the mayor may submit the acceptance of § 103 to the voters at an annual city election. The provisions of § 104 would be superfluous if the contention of the respondents is sound. The acceptance of G. L. c. 41, § 82, must in cities be by vote of the city council. The form of this section is imperative. It would be difficult to reconcile it with the proposed interpretation of § 104 of c. 54. Confirmatory arguments adduced from the terms of other statutes have been presented by the plaintiff, but it is not necessary to specify more.

The history of G. L. c. 54, § 104, indicates that it relates

to elections rather than to questions touching the ordinary transactions of a town and having immediate connection with its internal concerns. Without tracing the various mutations of this section from its first appearance in St. 1891, c. 328, § 1, to the present, it is enough to say that its evolution bears no indication that it was intended to apply to such a case as the present vote, where open discussion in town meeting as to the wisdom of adopting the proposal of the article in the warrant might be beneficial and informing to voters desirous of acting in the public interest.

Arguments based upon the large number of voters in Milford and the smallness of its town hall have no relevancy to the interpretation of statutes of State wide operation.

The conclusion is that the provisions of the civil service law respecting the police force were accepted by the town of Milford at its annual meeting on March 2, 1925, at the adjournment thereof held on March 6, 1925.

The town of Milford has never accepted the provisions of G. L. c. 41, § 97, or corresponding provisions of the earlier statute touching the establishment of a police department. The town has, however, adopted by-laws providing that the selectmen shall annually appoint a chief of police at a fixed salary, and empowering the selectmen to make such rules and regulations "for the government and discipline of the Police Department as they may from time to time deem necessary." As matter of custom the selectmen annually have appointed from thirty to thirty-five police officers and a chief of police. The assignment of patrolmen was left with the chief of police. He designated certain elected constables and appointed police officers and these men were given regular routes, worked stated periods of time and received specified compensation.

This arrangement constituted a "regular or permanent police . . . force" and a chief of police within the terms of the civil service law, G. L. c. 31, §§ 48, 49. It was such a police force as the town might organize and support under G. L. c. 41, § 96, without accepting the provisions of the following § 97, whereby somewhat rigid conditions are prescribed for the police department of such municipalities

as accept it. That point is settled by *Adams* v. *Selectmen of Northbridge, post,* 408, decided this day.

It was a regular police force within the meaning of G. L. c. 31, § 48. It was regular in the sense that it consisted of a considerable number of men serving constantly throughout the year of their appointment; it was organized and under discipline and its members were appointed to specified duties; it was recognized by town by-laws, and was supported by annual appropriations and its members received stipulated compensation. The police force was permanent, also, in that it was treated as a branch of the public service of the town year after year. It need not also be permanent in the sense of having a number of members fixed by by-law, nor an indeterminate tenure, in order to come within the purview of that section.

At the annual town meeting of Milford on March 2, 1925, three selectmen were to be elected. After the ballots had been canvassed by the tellers, the result of the vote for selectmen was announced in the early morning of March 3, 1925, showing that three persons had been elected, one of whom was Fred W. Fitzsimmons. The moderator then declared that these three were elected selectmen for the ensuing year and they immediately took the oath of office and due record was made accordingly. The town meeting was adjourned to March 6 and notice was given to the moderator and town clerk by one voter that he would petition for a recount of the votes cast for selectmen. Petition for such recount in proper form was filed during the forenoon of March 3. The three declared elected selectmen held a meeting on the afternoon of March 3, at which time they all knew that the petition for a recount had been filed. It has been the custom in the town of Milford for a long period of years, with one exception, for the selectmen to meet and organize on the day following their election, to make appointments including the chief of police, and to dispatch other business properly coming before them. The petitioner at that meeting on March 3, 1925, was appointed chief of police by a majority vote, when much other business in the way of appointments of officers and approval of bills also was transacted. The

petitioner had been appointed chief of police on March 6, 1923, again on March 4, 1924, and held office by virtue of that appointment on March 3, 1925.

The recount of votes for selectmen was completed on March 7. It showed that Fitzsimmons, declared elected as one of the selectmen at the meeting of March 2, had not in truth been chosen, but that another had received a larger number of votes and was elected. The three thus declared to have been elected selectmen as the result of the recount met on March 9 and voted by a majority that "the present Chief of Police John J. Moloney be removed and Ernest E. O'Brien was appointed acting Chief of Police." The petitioner on the day following in writing requested a public hearing upon his removal and also a legal notice of his removal. There was no compliance with either request.

The action of the three, including Fitzsimmons, who were declared elected selectmen on the early morning of March 3, in choosing the petitioner as chief of police conferred upon him title to that office. It is provided in G. L. c. 39, § 15, that the moderator of a town meeting shall "make public declaration of all votes, and may administer in open meeting the oath of office to any town officer chosen thereat." In compliance with that mandate the moderator announced the election of Fitzsimmons with the other two indisputably elected. That declaration was in accordance with the count made by the tellers. Fitzsimmons accepted the election thus declared. That election would have stood as the true result unless and until overturned in pursuance of provisions of law. If there had been no provision of law for a recount, it would have stood even though a mistake in the count had afterwards been discovered. *Eldridge* v. *Selectmen of Chatham*, 192 Mass. 409. *Fritz* v. *Crean*, 182 Mass. 433. : There is no provision that town officers declared elected according to law shall suspend their functions pending a recount. The absence of such provision is significant in view of G. L. c. 54, § 137, which is in substance that in elections of State and city officers the result shall not be declared by the aldermen until after the time for filing a petition for a recount has expired, and, if such petition has been filed,

then not until the recount has been had; and that no person elected to a city office shall act in an official capacity until this has been done.

Fitzsimmons was at least a *de facto* selectman when the petitioner was elected, and the petitioner's election as chief of police is not here open to successful attack.   As was said in *Attorney General* v. *Crocker,* 138 Mass. 214, 221, "Public necessity and policy require that the acts of an actual incumbent of a public office, in the performance of its duties,. shall be held valid, although the incumbent should not have a legal right to the office, and though his right should be questioned and disputed."   *Fowler* v. *Beebe,* 9 Mass. 231. *Petersilea* v. *Stone,* 119 Mass. 465.

The case at bar is distinguishable from *Attorney General* v. *Simonds,* 111 Mass. 256, and *Putnam* v. *Langley,* 133 Mass. 204, in each of which there was irregularity in the election. Here every step was in accordance with statute.   Those cases also are distinguishable on other grounds.

Since the provisions of the civil service law were adopted by the town at the meeting on March 6, and since the petitioner then held appointment as chief of police, it follows that he now holds office under the civil service law and cannot be removed except as therein provided.   See St. 1923, c. 242. This branch of the case is governed by *Barnes* v. *Mayor of Chicopee,* 213 Mass. 1.   Confessedly no removal has taken place in accordance with the laws regulating the civil service.

Since the selectmen did not give the petitioner specific reasons for their action in attempting to remove him and refused to grant any public hearing to the petitioner on his removal, the provisions of G. L. c. 31, § 45, and the reasoning of *McLaughlin* v. *Mayor of Cambridge, ante,* 193, do not afford him adequate remedy and the petitioner is entitled to the mandatory writ.

*Peremptory writ of mandamus to issue.*