CHARLES J. CRIMMINS *vs.* HIGHWAY COMMISSION OF BROCKTON & another.

Plymouth. April 4, 1939. — October 25, 1939.

Present: FIELD, C.J., DONAHUE, DOLAN, & COX, JJ.

*Civil Service.*

Although an employee in the labor service of a city, upon acceptance by the city of G. L. (Ter. Ed.) c. 31, § 47, acquired the status of an employee in the civil service by the second paragraph of Civil Service

Rule 30, he was for a period of six months subject to the probationary provisions of the first paragraph of Rule 18 and during that period could be removed without compliance with the provisions of § 43 of c. 31.

PETITION, filed in the Supreme Judicial Court for the county of Plymouth on March 21, 1938, for a writ of mandamus.

After hearing by *Ronan, J.,* the petition was dismissed. The petitioner alleged exceptions.

*D. L. Kelleher, Jr., (T. P. Joyce* with him,) for the petitioner.

*J. N. Maguire,* for the respondents, submitted a brief.

COX, J. The petitioner seeks reinstatement in his employment as a laborer in the classified service of the city of Brockton.

The city duly accepted the provisions of G. L. (Ter. Ed.) c. 31, § 47, relative to the employment of laborers designated as the "labor service" under the civil service law, effective on July 1, 1937. On that date the petitioner was, and had been for some time prior thereto, in the employ of said city as a laborer, and continued in such employment until September 1, 1937, when he was discharged without being given any reasons therefor in writing (see G. L. [Ter. Ed.] c. 31, § 43) and without his consent. It appears that the petition was not filed until March 21, 1938, more than six months from September 1, 1937, the date of the alleged removal of the petitioner, but no question is raised as to the extension which was granted by the court under G. L. (Ter. Ed.) c. 31, § 46A. The question is whether the petitioner was subject to the probationary period of six months under Civil Service Rule 18, so that he could be removed during that time without notice and an opportunity for a hearing under G. L. (Ter. Ed.) c. 31, § 43.

G. L. (Ter. Ed.) c. 31, § 3, provides that the "board" (composed of the commissioner and associate commissioners of civil service, see now St. 1939, c. 238, §§ 2, 12, and c. 498) shall make rules consistent with law, including a provision for a period of probation before an appointment or employment is made permanent. Accordingly Rule 18, in

its first paragraph, reads as follows: "No person appointed in the official or labor division shall be regarded as holding office or employment in the classified public service until he has served a probationary period of six months." This is a valid rule under the statute and during the period of probation established by it an appointee or employee may be discharged without the notice and opportunity for a hearing otherwise required by § 43. *McDonald* v. *Fire Engineers of Clinton,* 242 Mass. 587, 589. *Wells* v. *Commissioner of Public Works of North Adams,* 253 Mass. 416. *Johnson* v. *Mayor of New Bedford,* 303 Mass. 381. *McCarthy* v. *Malden,* 303 Mass. 563. *McLaughlin* v. *Commissioner of Public Works, ante,* 27. The second paragraph of Civil Service Rule 30 reads: "Whenever any class of employees in the Commonwealth or in any city or town not already in the classified service is placed therein, either by statute or by a rule, or whenever the Commonwealth, any city or town takes over any work that has previously been done by a private contractor, the Commissioner shall include in the classified service all of the employees who have been actually doing the work prior to the classification." In the case of *Johnson* v. *Mayor of New Bedford,* 303 Mass. 381, the question to be decided in the case at bar was adverted to. In that case on June 1, 1938, the contract for the collection of garbage in the city had expired and the city itself undertook the collection, taking over the employees of the private contractor of whom the petitioner was one. On June 21 the petitioner was discharged without having been given written notice in accordance with G. L. (Ter. Ed.) c. 31, § 43. It was held that the petitioner was subject to the probationary period of six months under Rule 18 and not entitled to written notice. It was pointed out, however, at page 382, that "We are not here dealing with a person already employed whose position is placed in the classified service 'either by statute or by a rule' without a new appointment or employment."

St. 1884, c. 320, entitled "An Act to improve the civil service of the Commonwealth and the cities thereof," provided for the appointment of commissioners, and § 2

required them to prepare rules not inconsistent with existing laws or with the provisions of the act, and adapted to carry out the purposes thereof, for the selection of persons to fill offices in the government of the Commonwealth and of the several cities thereof, which were required to be filled by appointment, and for the selection of persons to be employed as laborers or otherwise in the service of the Commonwealth and of the several cities thereof.   Section 14 required that the rules should, among other things, provide for the classification of the offices and employments to be filled, and for a period of probation before an appointment or employment was made permanent.   By § 15 "such rules shall apply to members of the police and fire departments other than police and fire commissioners, chief superintendents and marshals of police departments, and chief engineers of fire departments."   This policy of requiring such a period of probation has been carried forward without change. See G. L. (Ter. Ed.) c. 31, § 3 (e); St. 1939, c. 498, § 1. Veterans have been held to come within the provisions as to probation notwithstanding the provisions contained in §§ 21–28 of G. L. c. 31 (see now G. L. [Ter. Ed.] c. 31, §§ 21–28).   *Allen* v. *Chief of Police of Cambridge,* 259 Mass. 286.   New appointees to civil service positions come within the sweep of this provision.   *McDonald* v. *Fire Engineers of Clinton,* 242 Mass. 587.   *Wells* v. *Commissioner of Public Works of North Adams,* 253 Mass. 416.   *Allen* v. *Chief of Police of Cambridge,* 259 Mass. 286.   *McCarthy* v. *Malden,* 303 Mass. 563.

By St. 1894, c. 267, the provisions of said c. 320 and of all acts in amendment thereto were made applicable to all towns having a population of twelve thousand or over, provided the act was accepted by a majority of the legal voters of a town present and voting thereon at a town meeting called for the purpose.   St. 1896, c. 449, provided, in substance, that so much of said c. 320 and amendments thereto as related to the employment of laborers by cities, and that portion of the civil service rules of the Commonwealth and the cities thereof as authorized by said acts and designated therein as the "Labor Service" should not take

effect in cities of less than one hundred thousand population except upon the acceptance by the city council of such cities with the approval of the mayor. By St. 1901, c. 78, the provisions of said c. 320, all acts in amendment thereof, and the civil service rules thereunder that relate to the police and fire forces of cities other than the city of Boston, were extended and made applicable to "all members of the regular or permanent police and fire forces, or to the call fire force, or to either of said forces, in every town in the Commonwealth in which this act shall be accepted by a majority of the legal voters present and voting thereon at an annual town meeting or at any special meeting called for the purpose." The towns were given the right in any such vote to limit the application of said c. 320 and of the civil service rules thereunder to the police force or to the fire force, or to require the application thereof to both of said forces. This statute further provided that "Upon such vote each member of the force or forces included in it, and within the classified civil service, shall continue to hold his respective office until death, resignation or removal," and "No member of either of said forces so included by vote of the town, and within the civil service law and rules, shall be removed except for cause shown after a full hearing . . . ." The foregoing statutory provisions were substantially reënacted in R. L. c. 19. It is to be noted that by the provisions of R. L. c. 19, § 37, "Upon such vote of acceptance, each member of the force or forces included therein and within the classified civil service shall continue to hold his office until his death, resignation or removal." St. 1904, c. 314, provided that "Every person holding office or employment in the public service of the Commonwealth or in any county, city or town thereof, classified under the civil service rules of the Commonwealth, shall hold such office or employment and shall not be removed therefrom, lowered in rank or compensation, or suspended, or, without his consent, transferred from such office or employment to any other except for just cause and for reasons specifically given in writing" (see now G. L. [Ter. Ed.] c. 31, § 43). St. 1906, c. 210, provided, among other things, that "Every police

officer now holding or hereafter appointed to an office classified under the civil service rules . . . shall hold such office continuously during good behavior, and shall not be removed therefrom . . . except for just cause and for reasons specifically given in writing . . ." (see now G. L. [Ter. Ed.] c. 31, §§ 42A and 42B).

St. 1911, c. 468, extended the provisions of the then R. L. c. 19, and acts in amendment thereof and in addition thereto, and the civil service rules made thereunder, to superintendents, chiefs of police or city marshals in all cities except Boston and in all towns that had accepted or might thereafter accept the provisions of said c. 19, "otherwise it shall not take effect in any such city or town."

In the case of *Barnes* v. *Mayor of Chicopee*, 213 Mass. 1, decided in 1912, the provisions of St. 1911, c. 468, had been accepted by the city at the annual State election of 1911. The petitioner had been appointed to the office of city marshal in January, 1911, and served until February 15, 1912, when, after a hearing, he was removed by the mayor. The mayor refused to recognize the order of the Police Court of Chicopee that the petitioner be reinstated, whereupon the latter brought a petition for a writ of mandamus. It was pointed out that the statute in force in 1911 respecting tenure of office was St. 1906, c. 210, as amended by St. 1907, c. 272, § 1 of which provided that "Every police officer now holding or hereafter appointed to an office classified under the civil service rules of the Commonwealth, in any city, and whether appointed for a definite or stated term, or otherwise, shall hold such office continuously during good behavior . . . ." The court said, at page 5, "The effect of these statutes was to make the tenure of the heads of police departments thereby affected one during good behavior and to change the pre-existing term. The acceptance of St. 1911, c. 468, at the annual election by the voters of any city was the equivalent of a legislative determination that the offices therein described became classified under the civil service rules of the Commonwealth within the meaning of those words as used in St. 1906, c. 210, St. 1907, c. 272. It was plainly within the power of the Legislature thus to add

offices to the classified list. . . . But the fair meaning of the words used is that the person holding the office at the time it becomes classified, however appointed, continues to hold the office under the new tenure. This being the significance of the statute, it is of no consequence that the petitioner was appointed to the office before it was added to the classified list, and hence without complying with the requirements of the civil service law. The test fixed by the statute is the holding of the office, and not the method of appointment." Nothing was said in this opinion as to any period of probation. In the case of *Moloney* v. *Selectmen of Milford*, 253 Mass. 400, decided in 1925, the petitioner sought reinstatement as chief of police. On March 9 the selectmen passed a vote removing him from office and they refused to state reasons in writing therefor. They then appointed another chief of police in his place. In the opinion it was said, at page 407: "Since the provisions of the civil service law were adopted by the town at the meeting on March 6, and since the petitioner then held appointment as chief of police, it follows that he now holds office under the civil service law and cannot be removed except as therein provided. See St. 1923, c. 242. [See now G. L. (Ter. Ed.) c. 31, §§ 42A and 42B.] This branch of the case is governed by *Barnes* v. *Mayor of Chicopee*, 213 Mass. 1. Confessedly no removal has taken place in accordance with the laws regulating the civil service." St. 1923, c. 242, among other things, contained provisions that every police officer holding an office classified under the civil service rules in any city except Boston or in any town, whether for a definite or stated term or otherwise, should hold his office continuously during good behavior, and further provisions as to the procedure which must be complied with before he could be removed, suspended, transferred, or lowered in rank or compensation or his office abolished. In the *Moloney* case there was no reference to, or discussion of, Civil Service Rule 18, but the court must have had this rule in mind, for, on the day following the rendition of the opinion, the case of *Wells* v. *Commissioner of Public Works of North Adams*, 253 Mass. 416, was decided. In that case the petitioner was appointed per-

manent city engineer by the commissioner of public works of North Adams in accordance with the civil service. His petition for a writ of mandamus directing the commissioner of public works to recognize him as such officer was dismissed, and the court said, at page 419: "The petitioner applied for, received, and accepted the appointment in accordance with the civil service, and was so recognized under the certification, and as such appointee if nothing further appeared he would be entitled to the protection of the provisions of G. L. c. 31, §§ 43–45, relating to removals from office or employment. But the eighteenth rule of the civil service commission provides that 'No person appointed in the official or labor division shall be regarded as holding office or employment in the classified public service until he has served a probationary period of six months.' By G. L. c. 31, § 3, this rule has the force of law, and, the probationary period not having expired on April 28, 1925, there was no removal of the petitioner as a person holding permanent office or employment in the classified public service of the Commonwealth or any county, city or town thereof." In the meantime, in 1922, the case of *McDonald* v. *Fire Engineers of Clinton*, 242 Mass. 587, was decided. The petitioner appears to have been a call man in the fire department from January, 1912, until April 26, 1921, when he was "promoted" to the position of permanent driver. On October 3, 1921, he was dismissed as a driver and thereafter, on October 19, he was reduced from the position of driver in the permanent fire department to that of call man. In the meantime, in 1914, the town had voted to accept the provisions of R. L. c. 19, § 37, "in so far as applicable to the fire department of the town," and had accepted the provisions of a statute that permitted the appointment as a member of the permanent fire force without civil service examination of any person then in the call fire department who had served as a call man for five or more successive years if certified to be competent physically for duty. (See now G. L. [Ter. Ed.] c. 48, § 36.) In dismissing the petition it was held that the board of fire engineers in discharging the petitioner acted under the then Civil Service Rule 24, which provided that

every original appointment for permanent employment in the official service should be for the probationary period of six months. It was said, at page 589: "It is plain that under that rule he was on probation from the date of his appointment as a permanent fireman on April 26, 1921, for a period of six months thereafter; and that as he was discharged before the expiration of that time, he is not entitled to the benefits of the civil service law respecting removal, suspension, lowering in rank, or compensation under G. L. c. 31, §§ 43, 44, 45." It was also held that the word "promote" should be construed as equivalent to the word "appoint," that it was manifest that the petitioner's appointment while a call man was an "original appointment for permanent employment" under Rule 24, and that he was not entitled to notice and hearing under G. L. c. 31, § 43. This decision was followed by the passage of St. 1923, c. 109, under the provisions of which the promotion of a call man to membership in the permanent force might be made without civil service examination and "without any probationary period of service required under said chapter thirty-one and the rules and regulations made thereunder," and which further provided that "Every call man . . . who, prior to the date this act takes effect, was appointed, under and in accordance with the provisions of said section thirty-six [G. L. c. 48, § 36], as a member of the permanent fire force in a city or town and who on said date is serving a probationary period under the provisions of chapter thirty-one of the General Laws and the rules and regulations made thereunder shall, forthwith upon the taking effect of this act, become a permanent member of said fire force." (See now G. L. [Ter. Ed.] c. 48, § 36.) This limited relaxation of the requirement as to probation is not without significance.

In our opinion the *Barnes* and *Moloney* cases are not decisive of the question to be determined in the case at bar. They were concerned with the interpretation of the law as it then related to police officers (see now G. L. [Ter. Ed.] c. 31, §§ 48, 49, 42A and 42B).

The civil service commissioners, acting under the provisions of said § 3 of c. 31, have provided for thirty-five classes

in the official service, so called, several of these classes containing divisions, one as many as nine. Civil Service Rule 32, among other things, provides for the division of the "Labor Service" into three classes, one of which is composed of "Laborers," and for a division of the classes into suitable lists to conform to the work for which applicants are qualified or which employees perform. Section 47 of G. L. (Ter. Ed.) c. 31, which was accepted by the city as hereinbefore described, contains no specific designation as to what laborers, if any, are included in the event of the acceptance of its provisions by the city council. The provisions of the section in this respect are negative in character and are to the effect that they and the rules established under § 3 shall not be in force until, as in the case at bar, said provisions have been accepted. In this respect § 47 differs from §§ 48 and 49 of G. L. (Ter. Ed.) c. 31 which specifically relate to police and fire forces as well as superintendents, chiefs of police and chief marshals. Civil Service Rule 30, entitled "Offices not included in Rules," provides in its first paragraph for the possible contingency when a request is made relative to appointment to an office or position to which the rules do not apply, and the second paragraph, in effect, requires the commissioner to include in the classified service all of the employees who have been doing the work whenever any class of employees not already in the classified service is placed therein. In other words, Rule 30 is designed to supplement the classifications already made and to provide for an available classified list in situations where, if they arise, no list is immediately available. Rule 30 cannot transcend the authority that justifies its existence. If possible, it should be given a construction within that authority, and we are of the opinion that the commissioners did have authority to provide for a classified list in the event of the acceptance by a city of the provisions of § 47.

The civil service commissioners have no power to make appointments to the classified service. *Timmins* v. *Civil Service Commissioners*, 276 Mass. 142, 145. See *Opinion of the Justices*, 145 Mass. 587, 590; *Attorney General* v. *Trehy*, 178 Mass. 186, 188, 189; *McLaughlin* v. *Commissioner of*

*Public Works, ante,* 27, 29–30. There is no difficulty in construing Rule 18 to apply to employment. *Gardner v. Lowell,* 221 Mass. 150, 153. Upon the acceptance of § 47 and agreeably to the provisions of the second paragraph of Rule 30, the petitioner acquired the status of an employee in the classified civil service, subject, however, to the provisions of Rule 18. To hold that he thereby became a permanent employee and not subject to Rule 18 would contravene the mandatory provisions of c. 31, that there shall be a period of probation before an appointment or employment is made permanent. The record does not disclose how long the petitioner had been employed before the acceptance of § 47. It is conceivable that upon the acceptance by a city of this section the terms of employment of those who would thereby become classified might range from one day to a long period of years, but up to the time of acceptance of the provisions of the section it is assumed that an employee, whatever his term of service, could have been discharged at any time, subject, however, to any provisions of law to the contrary relating to the employment of veterans. It may be said that to hold that Rule 18 is applicable upon acceptance of § 47 may subject to dismissal within six months employees who have worked for the city for years, or for a longer period than that required for probation. But the fact of the matter is that if the section is not accepted they would be subject to the same possibility of dismissal, and we cannot bring our minds to the conclusion that faithful and efficient employees in the labor service of a city are in any greater danger of dismissal from the service after the acceptance of the law than before.

We are of the opinion that, upon the acceptance of the provisions of § 47 by the city of Brockton, the petitioner did not thereby acquire a permanent tenure, but, on the contrary, became subject to the provisions of Civil Service Rule 18, and that, inasmuch as his removal was within the probationary period therein provided, his exceptions must be overruled. It is

*So ordered.*