GEORGE KAEBLE *vs.* MAYOR OF CHICOPEE & another.

STANLEY OTFINOWSKI *vs.* SAME.

Hampden. December 30, 1941. — March 31, 1942.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Municipal Corporations*, Parliamentary procedure, Officers and agents. *Chicopee. Civil Service. Parliamentary Procedure.*

Upon a failure by the president of the board of aldermen of the city of Chicopee, after he had declared a motion to adjourn carried by a hand vote, to comply with a request promptly made by four aldermen that the vote upon that motion be taken by roll call in accordance with § 14 of the charter, St. 1897, c. 239, a declaration of adjournment by the president was of no legal effect, and the meeting was still in session for further business where a quorum remained present.

Under G. L. (Ter. Ed.) c. 31, § 47, and c. 4, § 6, Fifth; § 7, First, a majority vote of a quorum present of the board of aldermen of Chicopee was sufficient for acceptance of c. 31.

A purported order of removal of an employee of the city of Chicopee within the six months' civil service probationary period after acceptance by the city of G. L. (Ter. Ed.) c. 31, followed by absence from work for a few weeks, was without effect in the circumstances and did not prevent his acquiring permanent civil service status six months after such acceptance; so that a subsequent discharge, although within six months after his resumption of work, was invalid if the provisions of § 43 of the statute were not complied with.

Two PETITIONS, filed in the Superior Court on December 10, 1940, for writs of mandamus.

The cases were heard by *Donnelly*, J., and in this court were submitted on briefs.

*W. M. Shea*, City Solicitor, & *T. A. McDonnell*, for the respondents.

*S. Ogan* & *J. Ogan*, for the petitioner Kaeble.

*J. P. Mahoney*, for the petitioner Otfinowski.

Cox, J.   These are two petitions for writs of mandamus brought against Leo P. Senecal, the mayor of the city of Chicopee, and Elias A. Mossey, acting supervisor of the ash and garbage department of that city.   Each petitioner seeks reinstatement to his former position as a laborer in that department.   The cases were heard by a judge of the Superior Court, who ordered the writ to issue in each case. The respondents excepted to the denial of identical requests for rulings in each case.

1. The first question to be determined is whether the provisions of G. L. (Ter. Ed.) c. 31, and the rules established thereunder, relative to employment of laborers designated as the "labor service" were accepted by the board of aldermen of said city. (G. L. [Ter. Ed.] c. 31, § 47; c. 4, § 7, First.)   By the charter of said city (St. 1897, c. 239; St. 1898, c. 132) the administration of all its affairs, except those of the public schools, is vested in an executive department consisting of one officer, the mayor, and a legislative department consisting of a single body, the board of aldermen.   (St. 1897, c. 239, § 2.)   Section 14 of said c. 239 provides, among other things, that the board of aldermen shall determine the rules of its own proceedings, that a journal of its proceedings shall be kept, that the vote of the board upon any question shall be taken by roll call when the same is requested by at least three members, and that a majority of the members shall constitute a quorum.

The board of aldermen held a meeting on August 8, 1939, at which sixteen of its seventeen members were present. A motion was carried that when the board adjourned, it adjourn to August 15, 1939.   A motion was then made to adjourn.   The president of the board called for a hand vote

and declared the motion carried. Four of the aldermen demanded a roll call (see St. 1897, c. 239, § 14); the president declared the meeting adjourned, and six of the aldermen left. The roll call was not taken. One of the aldermen called for a ruling from the city solicitor "on the adjournment," and he ruled that the meeting was not legally adjourned. Following the ruling of the city solicitor, there was a continuance of the meeting with ten members present, and an order was adopted by a roll call, with nine votes in the affirmative and one in the negative, accepting "the provision of Chapter 31, Section 47 of the General Laws of Massachusetts . . . and the rules established under it relative to the employment of laborers designated as the 'Labor Service' in all of the departments of the city." The action of the board was approved by the then mayor of the city on August 18, 1939. No other action was taken at any time by the board with reference to the acceptance of this statute.

The respondents contend that the provisions of said c. 31 were not accepted by the board for the reasons that the meeting of the board had adjourned before the vote purporting to accept the statute was passed, and that, in any event, the acceptance required a vote of at least two thirds of the members of the board.

The city charter requires the election of a president of the board (St. 1897, c. 239, § 12). It further provides that a majority of the members of the board shall constitute a quorum and that the board, so far as is not inconsistent with the charter, shall have and exercise all the legislative powers of towns and the inhabitants thereof, and also all the powers that were vested by law in the city and its inhabitants at the time of the passage of said c. 239.

The requirement that the vote of the board "upon any question" shall be taken by roll call when the same is requested by at least three members is binding upon the president, as the presiding officer, and is one with which he is required to comply. The records of the meeting that are a part of the agreed facts, not only fail to show any such compliance, but disclose that when the roll call on the

motion to adjourn was demanded by four of the aldermen, the president declared the meeting adjourned. This declaration of his was of no legal effect in the circumstances, and it follows that the meeting was still in session. In the statement of agreed facts contained in the bill of exceptions in the *Kaeble* case, which is applicable to both cases, it is stated that a motion was made that the meeting adjourn, that "the President declared that vote carried and the meeting stood adjourned." This is immediately followed by the further statement: "When the president . . . declared the meeting adjourned . . . ." These statements are not construed as amounting to a statement of fact that the meeting actually stood adjourned. On the contrary, they amount to nothing more than that the president declared the meeting adjourned. This is the only construction that is consistent with the records of the meeting. The fact that six of the aldermen left did not prevent the remaining members of the board from continuing with the meeting. Ten members remained, and a majority of the members constituted a quorum. It appears from the records of the meeting that the vote to adjourn, as declared, was doubted without delay. It also appears that the president left the meeting, and that he "returned." But he could not relieve himself of his duty to require the roll call that had been demanded. It does not appear that during the continuance of the meeting the doubt on the motion to adjourn was resolved in accordance with the charter, but apparently by common consent this doubt was resolved by proceeding to transact business, and this action is inconsistent with any other conclusion upon the motion to adjourn than that it was not carried. Accordingly, the meeting was continued without being adjourned and action was taken that was equivalent to a decision that the motion to adjourn was not carried, and further proceedings, if otherwise in accordance with the charter provisions, as we think they were, were valid. *Pevey* v. *Aylward*, 205 Mass. 102, 105–107. See *Mansfield* v. *O'Brien*, 271 Mass. 515; *Attorney-General* v. *Remick*, 73 N. H. 25; *Gallagher* v. *School Township of Willow*, 173 Iowa, 610.

The respondents contend, however, that a two-thirds vote of the members of the board of aldermen was necessary for the acceptance of the provisions of the civil service act relating to the "labor service." General Laws (Ter. Ed.) c. 31, § 47, provides for the acceptance "by the city council." General Laws (Ter. Ed.) c. 4, § 6, provides that, in construing a statute, certain rules shall be observed, unless their observance would involve a construction inconsistent with the manifest intent of the law-making body or repugnant to the context of the statute, and in the same section, in clause Fifth, it is provided that words purporting to give a joint authority to, or to direct any act by, three or more public officers or other persons shall be construed as giving such authority to, or directing such act by, a majority of such officers or persons. One of the rules and orders of the board of aldermen in the cases at bar provides that all employees or heads of departments, in or under the "City Government placed under Civil Service by the General Court, shall receive two-thirds vote of the Board of Aldermen before final acceptance," unless referred to a city election on referendum. It is unnecessary to determine the precise effect of this rule. When § 47 of said c. 31 is read in connection with § 6, Fifth, of said c. 4, we think it follows that nothing more than a majority vote is required. *Cooke* v. *Scituate*, 201 Mass. 107, 109, and cases cited. See *Bennett* v. *Board of Appeal of Cambridge*, 268 Mass. 419, 422. Compare *Milton* v. *Donnelly*, 306 Mass. 451, 458.

If it be assumed, however, that the rule of the board of aldermen is valid, the requirement of a two-thirds vote was complied with. General Laws (Ter. Ed.) c. 4, § 6, Seventh, provides that wherever action by more than a majority of a city council is required, action by the designated proportion of the members thereof, present and voting thereon, in a city having a single legislative board, shall be a compliance with such requirement. See *Ellison* v. *Haverhill*, 309 Mass. 350. There were ten of the seventeen members present when the vote was taken, nine of whom voted in the affirmative.

2. The petition in the *Kaeble* case alleges a wrongful discharge of the petitioner on June 10, 1940, and the petition in the *Otfinowski* case alleges a refusal to employ the petitioner on August 6, 1940, and continuing since then. The respondents contend, however, that both petitioners were discharged prior to these dates, Kaeble on January 23, 1940, and Otfinowski on February 6, 1940, and that, accordingly, neither petitioner had any status as an employee under the civil service at the times when, it is contended, they were again discharged. There was evidence that both petitioners were employed in the ash and garbage department prior to and on August 18, 1939, when the action of the board in accepting the provisions of the civil service act was approved by the mayor, and continued to be so employed thereafter. Kaeble, on January 23 or 24, 1940, received the following notice signed by the respondent Mossey as "Acting Supervisor": "This is to notify you that your services are no longer required, and you are hereby relieved of your duties as laborer in the Ash & Garbage Department of the City of Chicopee as of this date, 12 —— noon." Otfinowski, on February 6, 1940, received a notice signed by the respondent Mossey as "Act. Supervisor," in all respects identical with the notice to Kaeble except as to date and that "12 —— noon" was omitted.

The charter (St. 1897, c. 239, § 28) provides that the executive powers of the city shall be vested solely in the mayor, and may be exercised by him either personally or through the several officers or boards of the city in their departments under his general supervision and control. The charter makes no provision for an ash and garbage department, but § 47 of said c. 239 provides that the mayor, the president of the board of aldermen and the city engineer, shall constitute a board of commissioners who, among other things, shall have general charge of all matters relating to the executive or administrative departments that are not included in the duties of any other administrative officer or board; and § 48 of said chapter provides that all administrative officers and boards "herein . . . and . . . hereafter established" by the board of aldermen not coming

within the department of any officer or board "above-named," shall have power, "except as herein otherwise provided," to appoint or employ and remove or discharge all officers, clerks and employees in their respective departments. "Orders of removal shall state the reasons therefor, and shall be entered upon the record of the officer or board making the same, and the removal shall take effect upon the filing of a copy of such order with the city clerk." It is reasonable to assume that an ash and garbage department had been created, and there was evidence that the mayor had charge of it. The respondent Mossey testified that he hired and discharged men without being told by the mayor to do so; but whatever may have been the status of this department, and whoever may have been in charge of it, there is no evidence that the charter provisions relative to the removal of employees were complied with, in that any copies of the orders of removal were ever filed with the city clerk, when, as provided in the charter, such removals "shall take effect." There was evidence in the *Kaeble* case that when he received the notice of January 23, 1940, he asked the mayor if he was "laid off for good," and that the mayor replied: "No, you are going to be laid off temporarily . . . you will be back to work in a few days"; that during the same week the mayor told him that he was going to put him to work, and that he was "going to put . . . [him] back to work so . . . [he would] take . . . [his] civil service rights." There was also evidence that he returned to work on February 12, 1940, and that, with the exception of the period from January 23 to February 12, 1940, he worked steadily from 1936 to June 10, 1940. There was evidence that when Otfinowski received the notice of February 6, 1940, he was told by the respondent Mossey that he would be called back in a few days; that he returned to work on February 15, 1940; and that he was employed until August 6, 1940. The civil service commission was not notified of either of these alleged removals.

The respondents concede that, upon the acceptance by the municipality of the civil service act as to the "labor service," each petitioner acquired the status of an employee

in the classified civil service, subject, however, to Civil Service Rule 18 that requires the serving of a probationary period of six months. *Crimmins* v. *Highway Commission of Brockton,* 304 Mass. 161, 171. (See now St. 1941, c. 195.) As was pointed out in the *Crimmins* case, employees in the position of the petitioners do not acquire a permanent tenure for six months, and if they are, in fact, removed during their probationary period, they cannot complain. If properly removed, they are not entitled to the benefit of the provisions of G. L. (Ter. Ed.) c. 31, § 43. It is unnecessary to determine whether notice of the alleged removals in January, 1940, and February, 1940, respectively, should have been sent to the director of civil service in accordance with the provisions of G. L. (Ter. Ed.) c. 31, § 18, as amended by St. 1939, c. 238, § 23.

The resumption of work in the department by the petitioners cannot be regarded as new appointments to the classified civil service. No attempt was made to comply with the provisions of G. L. (Ter. Ed.) c. 31, § 15, as appearing in St. 1939, c. 238, § 21, relative to appointments and certifications therefor. The respondents, in effect, concede this. Nevertheless, when notice was given to Kaeble of his alleged removal on June 10, 1940, notice was sent to the "Civil Service Commission." From the record of the civil service commission of the employment of Otfinowski, which was in evidence, it seems that notice of his removal on August 6, 1940, was also given. This record also contains the statement that the department (evidently the ash and garbage department) had informed the civil service commission that Otfinowski did not work out his full probationary period as he was first "laid off" on February 6, 1940, and rehired as a laborer on February 15, 1940; and the record further recites that, "From information given in department's letter of 9.9.40, he [Otfinowski] has completed his probationary period and is considered a permanent employee of the Ash & Garbage Department." It would seem that the notices to the "Civil Service Commission" were given in an attempt to comply with the provisions of G. L. (Ter. Ed.) c. 31, § 18, as amended by St.

1939, c. 238, § 23, which requires that the removal of any person within the classified civil service shall forthwith be reported to the director of civil service. It would seem to follow from the fact that these notices were given that the status of the petitioners as permanent civil service employees was recognized in the city, and that no removals, in fact, were intended in January and February, 1940.

The attempted removals of the petitioners on January 23, 1940, and February 6, 1940, respectively, were without effect. It follows from this that each petitioner acquired the status of a permanent employee and could only be removed in accordance with the provisions of G. L. (Ter. Ed.) c. 31, § 43, which, among other things, provides that such an employee cannot be removed from such employment "except for just cause, and for reasons specifically given him in writing within twenty-four hours after such removal." The alleged notice of removal of Kaeble on June 10, 1940, signed by Mossey as acting supervisor is as follows: "I am sorry to inform you that your services as a Laborer in the Ash and Garbage Department in the City of Chicopee will terminate as of Monday, June 10th, 1940." The notice to Otfinowski of August 6, 1940, is in identical language except as to the date on which his services were to terminate. The respondents do not contend that these notices complied with the provisions of said § 43. See *Tucker* v. *Boston,* 223 Mass. 478; *Bailen* v. *Assessors of Chelsea,* 241 Mass. 411, 413, 414, and cases cited; *Corrigan* v. *School Committee of New Bedford,* 250 Mass. 334, 338; *Murphy* v. *Casey,* 300 Mass. 232, 234.

3. There was no error in the denial of the respondents' requests for rulings. One of these raised the question whether the provisions of G. L. (Ter. Ed.) c. 31 had been legally accepted, and the others relate to the status of the petitioners with reference to their employment, including the question whether they were lawfully removed from their employment, Kaeble in January, 1940, and Otfinowski in February, 1940, and whether the several petitions should be dismissed.

*Exceptions overruled.*