RAYMOND RHINE *vs.* INTERNATIONAL YOUNG MEN'S CHRISTIAN ASSOCIATION COLLEGE.

Hampden.   September 23, 1959. — October 30, 1959.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Contract,* Of employment, Teacher's contract, Performance and breach.
*Words,* "Probationary."

Under a college's "personnel policy" providing in different sections that its "total content" applied to members of the teaching faculty as distinguished from administrative and part time or special personnel as to whom it was applicable only in part or not at all, that after the first three years of service, which were "probationary," members of the faculty should have "tenure," and that there should be certain grounds and procedures for "separations" of faculty members "desired by the administration," a failure to reappoint a faculty member upon completion of three years of service under three successive annual appointments would be merely an exercise by the college of its discretionary right not to continue the employment and would not be a "separation" permissible only in conformity with such provisions respecting "separations." [614]

No cause of action in contract against a college by a member of its faculty who was not entitled as of right to be reappointed and thereby to secure "tenure" upon completing a "probationary" period of three years service arose where he was at first notified that he would not be reappointed but later was offered and accepted an appointment for one more year on condition that it would be a "terminal appointment with no commitment beyond . . . [that] year." [615]

CONTRACT.   Writ in the Superior Court dated June 12, 1952.

The action was tried before *O'Brien, J.*

*Henry A. Moran, Jr.,* for the plaintiff.

*Frederick S. Pillsbury,* for the defendant.

CUTTER, J. In this action of contract, the plaintiff seeks to recover from the defendant (the college) for an alleged breach on June 4, 1951, of his contract of employment as assistant professor. The only question argued by the plaintiff is whether the trial judge correctly directed a verdict for the defendant. The relevant facts are stated in their aspect most favorable to the plaintiff.

The plaintiff was first appointed assistant professor at the college for the academic year beginning in September, 1948. With the letter of appointment was enclosed a copy of the college's "Faculty Personnel Policy" (the policy). This stated "the arrangement that governs appointments and tenure," defined the extent of its application to various teachers and other employees,[1] and contained provisions governing "tenure" and "separations."[2]

---

[1] Section 6 of the policy defines "a member of the faculty" and states that faculty members are divided into three groups: (a) teaching faculty; (b) administration; and (c) part time or special. Of group (a), § 6 says, "The total content of the . . . policy applies to such individuals." Group (b) may "enter into all discussions, have the right to vote, and hold office" but "they are not covered by the other features of this policy." The "contents of this . . . policy [do not] apply to" group (c).

[2] Section 16 of the policy, dealing with "tenure," reads: "It is the policy of the college to maintain continuity of service. After three years of service, members of the faculty may assume that they have permanence of tenure, if their work continues to be satisfactory to the trustees of the college. It is understood, of course, that major changes in educational policy, in which subjects or departments are discontinued, or a serious financial crisis, requiring drastic budget reconstruction, might modify this general policy of continuous service. *The first three years are to be probationary.* . . . Members of the staff will be notified of their reappointment not later than March 15. After three years of service, no formal notice of reappointment need be given" (emphasis supplied).

The relevant portion of § 17, dealing with "separations," reads: "If separation is desired by the administration, faculty members who have been notified of their separation shall have the right of appeal either personally or through the elected faculty personnel committee to the president and the trustees' committee on instruction. Notice of such separation will be given in writing to the faculty member not later than March 1. If an appeal is made, the committee on instruction will state the grounds for separation in writing. These grounds may include any or all of the following: (a) Personal inadequacy; (b) Incompetence in teaching or administration; (c) Moral delinquency; (d) Conduct or teaching inconsistent with the standards and purposes of the college, (e) Contingencies such as are enumerated in article 16. The decision of the instruction committee of the trustees will be final. Faculty members desiring to terminate their service will notify the president of their intentions not later than May 1."

The plaintiff's appointment was successively renewed for one year for the academic years beginning in September of 1949 and 1950.

On February 28, 1951, following a conversation with the college's president in which it appeared that the plaintiff's reappointment was "uncertain," the plaintiff was notified that he would not be appointed for another year "due both to the curtailment made necessary by reduced enrollment and to an impending reorganization of our curriculum." Thereafter, there were several conversations between the plaintiff, on the one hand, and either the college president or a dean, during which the plaintiff contended that he had not been given the real reasons for the failure to reappoint him. There was discussion of part time employment which the plaintiff refused, at the same time talking of litigation.

On June 4, 1951, the college president wrote to the plaintiff ". . . I am prepared to renew your appointment . . . for the academic year beginning in September, 1951, under the following conditions: (1) that this is to be regarded as a terminal appointment with no commitment beyond the next academic year; (2) that you shall be free to ask release . . . up to September 1 . . . to accept another position." This was accompanied by another letter, not here relevant, stating certain of the president's reasons for his action. The plaintiff, who at the time had legal counsel, acknowledged both letters on June 6 and said "I hereby accept the content of both letters," adding "[T]he arrangements which you have made . . . will . . . give me a fair opportunity to provide for my best interests."

On June 12, despite the correspondence just described, the plaintiff requested the faculty personnel committee created pursuant to the policy to make an investigation of his "terminal contract." After investigation, the faculty personnel committee recommended on December 5, 1951, that the plaintiff "accept the situation." The plaintiff, on March 4, 1952, requested permission to appear before the instruction committee of the trustees. A subcommittee of the instruc-

tion committee found, among other things, that the president acted in good faith, that the grounds for separation listed in § 17 of the policy "apply only to members of the faculty on tenure," and that the plaintiff did not have tenure status. The subcommittee approved the action of the president in giving the plaintiff a terminal appointment. The subcommittee's report was reviewed by the chairman of the instruction committee and transmitted to the plaintiff on May 23, 1952. The present action was initiated by writ dated June 12, 1952.

1. Section 16 of the policy (see footnote 2, *supra*) provides that it is only after "three years of service, [that] members of the faculty may assume that they have permanence of tenure" and that the "first three years are to be probationary." The term "probationary" in this written contractual provision must be interpreted in its "usual and ordinary sense." *Ober* v. *National Cas. Co.* 318 Mass. 27, 30. In ordinary connotation, the word indicates a status of experimental testing of the employee. It certainly implies no commitment for continuance of employment, if for any reason the experimental relationship leads to the conclusion that a more extended relationship may be unsatisfactory. See *Scott* v. *Manager State Airport, Hanscom Field,* 336 Mass. 372, 375–377, construing the provisions of G. L. c. 31, § 20D, relating to probationary civil service appointees. Section 20D, indeed, in various respects may be more precise, and afford more protection to the probationary employee, than the somewhat general provisions of § 16 of the policy. Cases under the civil service laws with respect to probationary employees obviously do not furnish an exact analogy to annual academic appointments prior to the acquisition of tenure, but the concept of probationary service is in a general way comparable. See e.g. *McLaughlin* v. *Commissioner of Pub. Works,* 304 Mass. 27, 28–29; *Crimmins* v. *Highway Commn. of Brockton,* 304 Mass. 161, 164, 168–171; *Gibney* v. *Mayor of Fall River,* 306 Mass. 561, 566; *Younie* v. *Director of Div. of Unemployment Compensation,* 306 Mass. 567, 570; *Clement* v. *Selectmen of*

*Westwood*, 316 Mass. 481, 483. See also Annotation, 131 A. L. R. 383, 386, 409.

When the plaintiff received the "terminal" appointment of June 4, 1951, he had not completed the "probationary" three years of service. He was then serving under a reappointment for the academic year beginning in September, 1950. He had been notified by letter dated February 28, 1951 (see Restatement 2d: Agency, § 442), that the college could not "offer . . . a reappointment." Accordingly, no contention reasonably can be made that there was failure to notify him "not later than March 15," if, indeed, such notification was in any degree required by § 16 of the policy, a question we need not decide. See Restatement: Contracts, § 32, illustration 2. Cf. *Horton* v. *Wickwire Spencer Steel Co.* 239 Mass. 584, 586–587. Without more, his employment would simply have terminated at the end of the academic year. See *Wasson* v. *Director of Civil Defense, ante,* 322, 327; Williston, Contracts (Rev. ed.) § 1027, p. 2844. He was not deprived of employment during any academic year for which he had been appointed, so we need not decide whether, during such a year, he could have been discharged immediately only in a manner consistent with §§ 16 and 17 of the policy. We find nothing in either § 16 or § 17 which makes failure to reappoint a teacher, not on "tenure" and employed only for one year, a separation within the meaning of § 17, and we interpret failure to reappoint during the probationary term as merely a determination by the college, within its complete discretion, not to continue a relationship expiring by the terms of the appointment itself. To construe §§ 16 and 17 as requiring the college to reappoint a "probationary" appointee in the absence of one of the specified causes of "separation" listed in § 17 (or other valid ground for termination of the employment of a professor on tenure, if any) would make meaningless the obviously intended difference between "probationary" status and tenure.

We attach no weight to the sentence in § 6 (a) of the policy (see footnote 1, *supra*) to the effect that the "total content

of the . . . policy applies to" the teaching faculty, which, we assume, includes "probationary" teachers during the term of their appointments. The sentence is obviously used in contrast to the provisions of § 6 (b) and (c), dealing, respectively, with administrative officers (who are stated to be covered only by part of the policy) and with part time teachers (to whom the policy does not apply at all). The record discloses no particular in which the policy was not complied with so far as it may have been applicable at all to a "probationary" teacher like the plaintiff.

2. By the letter of June 4, 1951, which is the only breach of contract alleged by the plaintiff, the plaintiff was given an unequivocally terminal appointment of one year, for the next succeeding academic year. Prior to the acceptance of this appointment, the plaintiff had no contract for the succeeding year and was entitled to none. He is bound[3] by the terms of the contract which he accepted. The college's act in making the contract itself cannot constitute a breach of that contract or a separation from an employment for the succeeding year which the plaintiff did not have until the contract was made. It was not a separation from the employment for the then current year (1950–51) for the plaintiff was never separated from that. Even if the plaintiff's employment be viewed as continuous (cf. *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1, 4–5; *Allen* v. *Chicago Pneumatic Tool Co.* 205 Mass. 569, 574; Williston, Contracts [3d ed.] § 39; Corbin, Contracts, § 684) from the plaintiff's first appointment, the letter of June 4, 1951, was simply an exercise of the college's discretion, already stated, existing during the probationary period, offering further employment for one year only on the condition (accepted by the plaintiff and thus modifying his earlier contracts) that it was to be "terminal" and, in effect, to give rise to no rights of tenure.

*Exceptions overruled.*

[3] There is no suggestion of fraud inducing the acceptance of this contract (at a time when the plaintiff had counsel) which would permit disregard of the acceptance. Cf. *Shaw* v. *Victoria Coach Line, Inc.* 314 Mass. 262, 267–269, on which the plaintiff relies.