## MICHAEL SHAY'S APPEAL FROM PROBATE.

The statute (Gen. Statutes, p. 361, sec. 15,) provides that "upon the death of any married woman intestate, leaving real estate in which her husband has no estate by the curtesy, but upon which he has made improvements during coverture with her consent or for their mutual benefit, the value of such improvements shall constitute a valid claim against her estate in favor of the husband, and shall be a lien upon such real estate." This act was passed in 1875. Held not to apply to any such improvements made before its passage.

Whether the act is valid in its application to improvements made after its passage: *Quære.*

[Argued June 19th—decided November 22d, 1883.]

APPEAL from the decree of a court of probate. The Superior Court (*Andrews, J.,*) affirmed the decree, and the

appellant appealed to this court. The case is fully stated in the opinion.

*E. P. Arvine,* for the appellant.

*W. B. Wooster,* for the appellee.

LOOMIS, J. The question which the record presents involves the construction and validity of the following statute (Gen. Statutes, page 361, sec. 15 :)—

"Upon the death of any married woman, intestate, leaving real estate in which her husband has no estate by the curtesy, but upon which he has made improvements during coverture with her assent or for their mutual benefit, the value of such improvements shall constitute a valid claim against her estate in favor of the husband, and shall be a lien upon such real estate."

This provision first became a law when the revision of 1875 took effect. There had been, however, a previous act relating to the same subject, passed in 1871 (p. 665, of the session laws of that year,) but the claim for betterments under that act was predicated on the fact that the wife, from insanity, idiocy or other cause, had become incapable of making a will. We do not understand that the appellee makes any claim under this earlier statute, and we think he could not upon the finding as it now stands.

Under the act of 1875 one John Little, in the year 1881, made application to the probate court for an allowance for improvements on the land of his deceased wife, mostly made not only before the act of 1875, but prior to that of 1871. The court of probate granted his application and found due him the sum of one thousand dollars, and also decreed that the administrator on the wife's estate reimburse the applicant on demand for any sums he might be compelled to pay the Derby Savings Bank or other person on account of certain notes signed by him and his wife secured by mortgage of the wife's land.

From this decree of the court of probate the appellant

appealed to the Superior Court, where the same sum was found due for improvements, and the decree of the court of probate was affirmed in general terms, but no notice was taken of the extraordinary decree for reimbursement, and it is not mentioned in the assignment of errors for the consideration of this court.* After calling attention to this matter we propose to leave it where the parties have left it without further discussion.

In order to sustain the judgment for the one thousand dollars against the estate of the deceased wife it is indispensable to give the act in question a retrospective operation.

On this subject it is an established rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively. *Bay* v. *Gage*, 36 Barb., 448; Cooley's Const. Lim., 4th ed., 461; *Perkins* v. *Perkins*, 7 Conn.; 563; *Plumb* v. *Sawyer*, 21 id., 355; *Smith* v. *Lyon*, 44 id., 178.

The terms of the act in question, while they do not imperatively require it, are yet broad enough to include improvements prior to the passage of the act. Whether to give such construction or not will depend largely upon the equities the husband previously had and upon the principles that underlie such legislation. It is undoubtedly competent for a legislature to give a new and additional remedy for a right or equity previously existing, and where such a remedial purpose is evident a statute may be liberally construed to advance the remedy and give it full scope and effect, although the remedy becomes retroactive. But mere legislative enactment can never create a demand against a party who was not bound before, either legally or equitably. *Medford* v. *Learned*, 16 Mass., 217; *People* v. *Supervisors* of *Columbia County*, 43 N. York, 135; Cooley's Const. Lim., 4th ed., 460.

---

*Mr. Arvine, counsel for the appellant, desires that it be stated that he had no connection with the case until it had been brought into this court.

The appellee contends that the intent of the act we are considering was merely to remedy the process of law by which a surviving husband might realize for his improvements on the real estate of his deceased wife. Granting the premises we could not resist the conclusion. But is this position correct? What were the husband's equities prior to this act? At the outset of the discussion we should distinguish between the equities the husband might have had in this particular case and the equities which the statute contemplates. There are some allegations in the application to the probate court which point to a special agreement under which these improvements might have been made. If a bill in equity had been brought independently of the statute, that feature of the case would become important, but in this case those considerations are irrelevant. The application is based on the statute alone, and the present applicant stands as any other surviving husband would who had made improvements with the simple assent of the wife. The only equities that can be considered in this proceeding arise from the assent of the wife to the making of the improvements and the resulting benefit.

Where one person having no intimate relations to another invests his money and labor in erecting a building on land of another with his consent, there may be an implied ownership in the building on the part of the former which might furnish in equity a basis for giving a new remedy. But assent and benefit have a different signification as between husband and wife. Where husband and wife live together and the former occupies and improves her land, a simple assent on her part signifies nothing in favor of the husband's ownership or claim unless made with reference to some existing law which provides the husband a remedy; and even where a law already exists when the assent is given, it would seem from the principles recognized by this court in *Gilman* v. *Disbrow*, 45 Conn., 563, that such assent to be effectual should clearly refer to the existing law. In that case the wife owned the fee of land subject to her husband's life use. A builder who furnished materials for a building

under a contract with the husband, but with the knowledge and consent of the wife, sought on account of her assent to enforce a mechanic's lien against the wife's interest in the land, and it was held that he could not. PARDEE, J., in giving the opinion on page 566, says :—" As a pre-requisite to the lien she should herself either have made the contract, or have consented to the performance of the work after information from them that it was not to be done upon the personal credit of the husband, nor·upon the credit of his life estate, but upon the credit of her fee, and that this last would be subjected to a lien in default of payment. And, as we may assume that these structures would add to the profit of the life use, it is to be presumed that the husband was acting solely for himself and for the benefit of his particular estate, until it is made to appear that he was acting in fact as the agent of the wife."

If assent on the part of the wife and mutual benefit can have so little effect upon her property rights under an existing statute, in the absence of such statute it would seem impossible that they should confer any rights, legal or equitable, upon the husband. Instead of there being any presumption in his favor from the fact of the improvements so made, the presumption is against him and in favor of the wife.

It is·a well-established doctrine of the law that if a husband expend money upon land of his wife by erecting buildings or other permanent structures, the law will presume that he intended it as a gift for her benefit, and he cannot recover for the same either at law or in equity.  See the following treatises and the numerous cases therein referred to :—1 Washburn's Real Property, 4th ed., 235, 281 ; 1 Roper's Husband & Wife, 54 ; Schouler's Dom. Rel., side pages 166, 234 ; 2 Bishop's Law of Married Women, §§ 300, 448, 467, 472.

There was then no possible remedy for the husband independently of the statute. These improvements anterior to the statute vested immediately in the wife and became a part of her estate. The effect of the act in question, if

construed as claimed, would be to divest the property, and that too upon a consideration altogether past and gone.

But this is not all. Some features of the act strike us as not in full accord with the principles of justice and equity if we give it a retroactive effect. The claim, though made a lien on the particular estate improved, is not confined to that. The heirs cannot say we prefer to lose the land subject to the lien and save the rest of the estate. Besides giving the lien the statute in terms provides that "the value of such improvements shall constitute a valid claim against her estate in favor of the husband." The full claim must be allowed like any other, and it rests on the entire estate, which must respond as to a money demand. Such a statute, looking only to the future, ought to be more carefully guarded, but surely it cannot be sustained when applied to transactions before its passage. But it may be asked, how is it that the "betterment statutes" that prevail extensively in this country have been upheld? We reply, that wherever these acts have been sustained they have been very limited in their scope and rigidly guarded at every point to prevent injustice. When they have contained provisions like those in the act under consideration they have been declared void. See *Lessees* v. *Powell*, 13 Ohio St., 308; *McCoy* v. *Grandy*, 3 id., 463; *Childs* v. *Shower*, 18 Iowa, 261. And Judge STORY, in *Society &c.* v. *Wheeler*, 2 Gallison, 104, held the New Hampshire statute unconstitutional so far as it applied to past improvements.

In *Griswold* v. *Bragg*, 48 Conn., 577, SHIPMAN, J., in an able opinion has given the true grounds upon which the betterment act of this state can be vindicated. He says:—"The statute practically impresses upon the land of a successful plaintiff in ejectment a lien for the excess, above the amount due for use and occupation, of the present value of the improvements which have been placed on the land before the commencement of the action, by a defendant or his ancestors or grantors, in good faith, in the belief that he or they had an absolute title to the land in question, and forbids occupancy by the plaintiff until the lien is

paid. There is a natural equity which rebels at the idea that a *bonâ fide* occupant and reputed owner of land in a newly-settled country, where unimproved land is of small value, or where skill in conveyancing has not been attained, or where surveys have been uncertain or inaccurate, should lose the benefit of the labor and money which he had expended in the erroneous belief that his title was absolute and perfect. * * The theory of the Connecticut statute is that of Judge STORY, that an equitable lien is placed upon the land for the value of the improvements which the *bonâ fide* occupant has innocently made. Furthermore, the legal owner has his election, either to take possession of the land by paying the lien, or to receive in lieu of the land the sum which the court shall ascertain to be equitably due him. The owner's title is not forced away from him, but the equitable lien of the occupant is preserved. There is no election on the part of the occupant to keep the land and thus compel the owner to abandon his title, neither is there any judgment rendered against the owner for the value of the improvements, to be enforced by levy of execution."

The special reasons for appeal to this court do not predicate error upon the court's holding that the statute was valid as applicable to future improvements, and the only objection made in the argument was confined to its retrospective operation. We are not therefore called upon to decide whether the objectionable features of the act to which reference has been made would make the act or any of its provisions altogether void. We prefer to withhold any decision or intimation even upon that point until the question shall be properly presented and fully discussed.

In concluding we would call attention to a matter, possibly of some practical importance, which was not alluded to during the trial. The counsel for the appellee, as we have stated, bases the case for those representing the interests of the husband entirely upon the act as contained in the revision of 1875, which took effect at the time of that revision. But the court in determining the time when the improvements were made, for the purpose of presenting the question

of law, takes the year 1871, and finds that prior to that date the improvements amounted to the sum of nine hundred dollars, and those made since that date to one hundred dollars; but we do not know from the record whether the latter was before the act of 1875 took effect or after. The error probably originated from the date, 1871, on the margin of the General Statutes against the act in question.

There was error in the judgment complained of and it is reversed, and the case is remanded to the Superior Court.

In this opinion the other judges concurred.