THE STATE OF CONNECTICUT EX REL. THOMAS J.
CURRAN *vs.* JOHN M. GOLDEN, DIRECTOR OF
PUBLIC WORKS FOR THE CITY OF NEW HAVEN.

MALTBIE, C. J., HINMAN, BANKS, AVERY and JENNINGS, Js.

Argued January 3d—decided February 21st, 1933.

*John V. O'Brien,* for the appellant (relator).

*Vincent P. Dooley,* with whom, on the brief, was *David M. Reilly,* for the appellee (respondent).

AVERY, J. The petitioner brought this application alleging that he had been discharged from the position of bridge tender at New Haven without sufficient cause or notice, and because of his political opinions, and his name had been removed from the payroll of the city; and he asked that he be reinstated in his position or, in the alternative, that his name be restored to the payroll. The court, after hearing, rendered judgment in favor of the respondent and discharged the writ, and has found these facts: Classified civil service is in effect in New Haven. An examination for bridge tenders was held by the civil service board July 31st, 1925, and the relator passed the examination and was placed fourth highest on the eligible list, in a tie with a man named Clyne. Bridge tenders are in a competitive class, as designated by the rules of the civil service board, and are under the sole control of the director of public works. In November and December, 1925, vacancies occurred in the regular list of bridge tenders, and the persons preceding the relator upon the eligible list were appointed. In January, 1926, a civil service bridge tender for many years, by the name of McVety, was appointed by Michael M. McGovern, director of public works, as "supervisor of bridges or foreman of bridges." There is no provision in the charter or ordinances of the city of New Haven which permitted the creation of such a position, and no such position is in the classified civil service. Thereafter, and about January 11th, 1926, the relator applied to the director of public works for the position of bridge tender, and was informed by

the director that there was no vacancy on any of the bridges, but that he had placed a regular civil service bridge tender, McVety, as supervisor or foreman and would appoint the relator as a temporary or extra man. At the time of the employment of the relator, there was no vacancy requiring the permanent appointment of a bridge tender under civil service, but the director knew that the relator's name was on the eligible list. The relator was appointed as an extra man and was carried along as such by the director of public works. He remained continuously in such employment until February 1st, 1932; and, during all that time, he received his wages weekly in cash. All other bridge tenders were paid as civil service employees semi-monthly and by check. The department of public works had two lists of expenses in relation to bridges; one a civil service payroll and the other a bridge maintenance list. In the latter, emergencies and extras were accounted for. The relator was not at any time on the civil service payroll, but was at all times on the bridge maintenance list. The director of public works at no time notified the civil service board of the employment of the relator, and no record of his appointment to any civil service position was on file with that board.

January 1st, 1932, John M. Golden was appointed director of public works for the city of New Haven; and, about February 1st, during an inquiry into the departments and bureaus under him, sent for the relator and informed him that he found from the records that he was an extra man, and that he was discharged, and, thereafter, another person was appointed as extra man in relator's place.

The appellant asks various corrections and additions to the finding, but no correction can be made by which his position would be advantaged. On this

appeal, his claims are: First, that the appointment of McVety as supervisor or foreman of bridges caused a vacancy; and, second, that the relator was appointed as a civil service bridge tender to fill the vacancy.

From the finding, it appears that McVety was paid $42 a week, and the other bridge tenders and the relator were paid $30.80 a week, but that after his appointment as supervisor or foreman, McVety remained as a bridge tender and supervisor, having no regularly assigned bridge, but tending one or another at various times until December, 1931, when, a civil service bridge tender having died, McVety took over the eight-hour shift formerly assigned to the man who had died. Under the rules of the civil service, the term of an eligible list is not more than two years from its establishment, and, at the time McVety took over the work formerly assigned to the man who had died, the eligible list on which relator's name was listed had expired.

The fundamental claim of the plaintiff is that at the time he was employed, there was a vacancy among the bridge tenders caused by the elevation of McVety to the position of supervisor or foreman, and that the plaintiff, being then the highest on the eligible list was, by his employment, automatically made a bridge tender under the rules of the civil service. These rules provide for a probationary period of two months, but it is found that he was not appointed for any probationary period.

The charter of New Haven (13 Special Laws, p. 436, § 161) provides: "No person shall hold any office under the city, or any department thereof, the compensation for which is a salary, while holding any other official position in or under the government of this city, the compensation for which is a salary," and the plaintiff claims that because of this provision,

McVety was automatically separated from his position as bridge tender by reason of his appointment as supervisor, and a vacancy was thus created. If an independent and separate position as supervisor existed, there would be force in this claim, but, under the finding, it appears that no such office as supervisor of bridges existed in the city of New Haven, and, further, that McVety performed duties as a bridge tender while receiving a larger compensation than the others. As there was no such position as supervisor of bridges, the attempted appointment of McVety as such would not automatically terminate his employment as a bridge tender, while he still continued to perform duties incumbent on the latter position. An attempted appointment to a position which did not exist would be a nullity, and would have no effect on the position which he held. *State ex rel. v. Kearns,* 47 Ohio St. 566, 25 N. E. 1027, 1028; *Hermann v. Lampe,* 175 Ky. 109, 194 S. W. 122, 126. The court has found, and there is evidence to support the finding, that when the relator was put to work on the bridge, he was informed that his employment was temporary, and that there was no vacancy in the civil service list. He knew he was appointed as an extra man, and accepted the work as such. He knew also that he was paid weekly in cash, while the civil service bridge tenders were paid semi-monthly by check. At no time from the time of his employment to the time of his discharge did the relator make request of the director of public works or the comptroller or the civil service board to be placed on the civil service list. As there was no vacancy in the position of bridge tender at the time the relator commenced work, and as his employment was merely temporary as an extra man, the temporary appointment could not ripen into a permanent civil service position. *State ex rel. Raines v. Seattle,* 134

Wash. 360, 235 Pac. 968, 970; *Darling* v. *Maguire,* 129 N. Y. Sup. 385, 389; *People ex rel. Orr* v. *Scannell,* 66 N. Y. Sup. 182, 184. It follows that as the relator never received an appointment under the rules of the civil service, and was only employed and carried on the payroll as an extra man, he could be discharged at the pleasure of the director. 2 McQuillin, Municipal Corporations (2d Ed.) § 581; *Rodrigue* v. *Rogers,* 4 Cal. App. 257, 87 Pac. 563, 564.

There is no error.

In this opinion the other judges concurred.