THE NEW HAVEN TAXPAYERS RESEARCH COUNCIL, INC., ET AL. *v.* MICHAEL DePALMA ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued October 6—decided December 12, 1950

*George W. Crawford,* for the plaintiffs.

*George G. DiCenzo,* for the defendants.

BROWN, C. J.  In this taxpayers' suit against the mayor, controller and board of finance of the city of New Haven for a declaratory judgment and injunctive

relief, the fundamental question upon this reservation[1] is whether the city's board of finance has the right or power to appropriate or to authorize, for city purposes, the expenditure of the excess of receipts over budgeted estimates without public hearing and without the approval, authorization or consent of the city's board of aldermen. The following summary of the stipulated facts suffices to present the problems involved in the six questions recited in the footnote upon which our advice is sought. Certain of the questions might have been more explicit, but "moneys" as used in each refers to moneys received in excess of the amount estimated in the budget as adopted.

[1] The questions reserved include:

"(a) Whether the Board of Finance has any right, power or authority to appropriate or to authorize the expenditure for city purposes [of] the said moneys of the city (excepting appropriations made by the Board of Finance upon the recommendation of the Board of Aldermen for public receptions, parades, concerts, and celebrations, to an amount not exceeding $1,500.00 in any one year) without the approval, authorization or consent of the Board of Aldermen?

"(b) Whether the Board of Finance has any right, power, or authority, to appropriate or to authorize the expenditure of city moneys or any part thereof, except as aforesaid, in any amounts for city purposes or objects not previously determined or authorized by the Board of Aldermen?

"(c) Whether the Board of Finance has any right, power, or authority to appropriate or authorize the expenditure of city moneys, except as aforesaid, despite the fact that the Board of Aldermen has not been consulted or had an opportunity to appropriate or to approve or recommend the expenditure of the same?

"(d) Whether the Board of Finance has the right, power or authority to appropriate or to authorize the expenditure of the city moneys in question, despite the fact that no public hearing has been had, and no opportunity has been afforded for a public hearing on the purposes and objects for which such expenditures may be made or on the amounts to be expended for such purposes and objects?

"(e) Whether the Board of Finance when it believes [it] necessary and when current appropriations have been exhausted has any right, power or authority to authorize the expenditure for city purposes [of] the said moneys of the city (excepting appropriations made by the Board of Finance upon the recommendation of the

The New Haven board of finance, six of whose nine members are appointees of the mayor, administers the city's finances, considers the financial aspects of its government as a whole, restrains wasteful or extravagant expenditures and, more specifically, makes annually and submits to the board of aldermen estimates of the amount of money to be appropriated for the city's expenses for the next ensuing year and recommends the rate of taxation to raise it. New Haven Charter (Rev. 1928) §§ 56-60, as amended. In October, 1948, the board of finance duly submitted to the board of aldermen for the year beginning January 1, 1949, estimates of the revenue to be received and the itemized amounts of money to be appropriated to meet the expenditures of the various departments, together with an estimate of the rate of taxation required to raise those amounts. 23 Spec. Laws 1100, No. 439. Of the total of $12,-182,817 for expenses, it estimated that $10,262,041 would be collected from taxes and $1,920,776 from other sources. Under a charter provision, the board of finance cannot estimate the receipts from property taxes in excess of 94 per cent of the amount of the levy. 21 Spec. Laws 751, No. 24, § 2. It recommended a tax rate of 32 mills on taxable property in thirty-two wards and of 15.95 mills in the remaining ward. By ordinance enacted October 29, 1948, after public hearing, the board of aldermen, having made certain amendments, adopted the budget, including the recommended

Board of Aldermen for public receptions, parades, concerts, and celebrations, to an amount not exceeding $1500.00 in any one year) without the approval, authorization or consent of the Board of Aldermen?

"(f) Whether the Board of Finance has any right, power or authority, when it believes [it] necessary and when current appropriations have been exhausted, to authorize the expenditure of city moneys or any part thereof, except as aforesaid, in any amounts for city purposes or objects not previously determined or authorized by the Board of Aldermen?"

estimates of moneys necessary to be appropriated and the rate of taxation for the year beginning January 1, 1949.

On November 17, 1949, and subsequent dates, the board of finance authorized the expenditure from the receipts for the year 1949 of $318,921.45 in excess of the estimates as adopted. This total was made up of the amount realized from current taxes levied for the year in excess of the 94 per cent permitted to be estimated, plus the net actual receipts in excess of those estimated from other miscellaneous sources. The action of the board of finance was taken without requesting or receiving the approval of the board of aldermen and without any action by it. The money was allocated to and spent by the various departments of the city upon this authorization. The board of finance had followed the same practice for several years preceding 1949 and intends to continue so to do. The named plaintiff is a nonprofit corporation for furnishing information and promoting economy and efficiency in government. With its co-operation, the city adopted its present budgetary and accounting procedure. The city's accounts have shown a very substantial amount of net receipts in excess of estimates for each year starting with 1941. They have shown in each of the last four years that a large part of this excess was expended solely by the action of the board of finance. In the year 1949, there were no capital expenditures made from it in lieu of bond issues. After the expenditure of the $318,921.45, the balance of the net receipts in excess of the estimates for 1949 was $85,-397.87. This was carried forward to a succeeding year.

As already indicated, the city's charter contains specific directives and procedures for budgeting, appropriating and allocating as well as raising its annual

revenues. In the execution of the procedure specified, the board of finance and the board of aldermen each have an independent and essential function to perform. The respective duties and powers of the two boards are defined in §§ 57 and 59 of the charter. Very briefly, its more significant provisions are that the board of finance approves bills for payment, authorizes transfers from one appropriation to another and estimates the amounts necessary to be appropriated for the expenses of the ensuing year, classified under departments and pursuant to proper hearings had, and the rate of taxation to meet them. The estimates and rate must then be submitted to the board of aldermen by a specified date and within five days thereafter must be published in the daily newspapers in New Haven. Following this publication and after the public hearing required by § 45 of the charter as an incident to the enactment of every ordinance, the board of aldermen must consider and act upon the estimates, appropriations and rate of taxation so reported by the board of finance. It may by a two-thirds vote decrease the rate of taxation and the appropriations, except any item for the payment of principal or interest of the municipal debt. It may not, however, increase them.

The foregoing provisions make clear that, notwithstanding the extensive power which they confer upon the board of finance, its recommendations as to the tax rate and as to the appropriations, except those relating to the municipal debt, are subject to modification by the board of aldermen. Sound reason for this appears in the fact that the board of aldermen is the body elected by the voters. As such, it constitutes the legislative branch of the city government and has general legislative powers. *State ex rel. Stamford* v. *Board of Purchase & Supplies,* 111 Conn. 147, 157, 149 A. 410. While the charter provisions circumscribe the powers

of the board of aldermen in appropriating city moneys and determining the tax rate, they neither divest it of these powers nor confer them upon the board of finance. The exercise of these powers is conditioned upon strict adherence to the procedure attached to their grant. 2 McQuillin, Municipal Corporations (3d Ed.) § 10.27. The board of aldermen is an elective body, charged with the duty of acting on the budget and tax rate only after public hearing. This procedure affords the taxpayers their only opportunity to be heard. The board of finance is an appointive body which acts without requirement of such hearing. This is an additional practical reason why the powers bestowed upon the former body, though circumscribed, nevertheless remain and continue controlling. See 37 Am. Jur. 668.

The long-established legislative policy of this state concerning the respective functions of the legislative branch of a municipal government and the board of finance is in harmony with the principles and conclusions which we have stated. The New Haven charter, by express provision in § 267, is a "public act," and it contains nothing which either expressly or by fair implication contravenes this policy. A board of finance as an administrative instrumentality is not peculiar to New Haven. Its purposes are declared by the General Statutes, and its practices pursuant to those statutes constitute the application of a well-established legislative policy of the state. General Statutes § 772 et seq. Though the powers of the New Haven board of finance may be somewhat less restricted in certain particulars, its functions do not differ materially from those of like administrative bodies which have been set up and have operated in other towns and cities throughout the state for years. As this court has said: "Apparently the purpose of these statutes is two-

fold. The General Assembly evidently intended that any town might establish a board whose particular duty it should be to consider the financial aspects of the town government as a whole, rather than from the standpoint of any particular office or department, and which might restrain wasteful or extravagant expenditures; also that, as appears from the provision for the laying of a tax sufficient to meet the appropriations made, except in certain specified contingencies, the town meet its current expenses by its current income." *Groton & Stonington Traction Co.* v. *Groton,* 115 Conn. 151, 158, 160 A. 902. The board of finance has no unrestrained right or power either to appropriate money or to establish the tax rate by action independent of the board of aldermen. What has been said disposes of the defendants' claim that when current budgeted appropriations are exhausted the board of finance, without the approval of the board of aldermen, has the right, power and authority to authorize for legal city purposes the expenditure of income received in any one year in excess of the budgeted estimated income for that year.

The gist of their further claim is that, since the estimates as approved by the board of aldermen specifically provided for a contingent account, the income in excess of the estimated amount specified in the budget must be held to have fallen within that category, obviating need of any further action by the board of aldermen concerning it. They argue that, by considering a budget in which there is provision for a contingent account and approving a tax rate thereon, the board of aldermen effectively specifies and provides for legal objects, purposes and conditions in municipal affairs that cannot be foreseen at the time of such approval and so follows a procedure essential to avoid the useless necessity of referring every unanticipated

item of expense which may subsequently arise to the board of aldermen. They further contend that income in excess of the budgeted estimated income in any one year is "unexpected income" which is a part of the general income of the city for such year, and that, although it only comes into being after the estimated income is received, when this unlooked-for amount becomes an excess over the budgeted estimated income it then constitutes a part of the operating budget for that year by virtue of its being carried to the contingent account. In support of their contention that it does become a part of the contingent account they rely upon § 6 of the New Haven ordinances, which provides: "Any other unexpected income . . . shall be carried to the contingent account . . . ." The defendants' contention cannot prevail unless this provision is to be construed as operative to incorporate as a part of the budget for the year 1949 the $404,-319.32 of income actually received in excess of the total amount of estimated income specified in the budget. To so hold would result in the expenditure of this very substantial sum, equivalent to approximately a one-mill tax on the grand list of the city, with no public hearing relative to its approval and with a total lack of anticipation or consideration of it by the board of aldermen.

Section 6 is a part of chapter 1 of the ordinances, entitled "Accounts and Claims." Section 4 prescribes the accounts to be kept by the controller and their designation, and § 5 provides that the proceeds of fire insurance policies or the sale of city property shall be held as a special fund. Obviously, the provision of § 6 which immediately ensues, that "any other unexpected income . . . shall be carried to the contingent account," relates to the bookkeeping duties of the controller. This provision of an ordinance enacted by the

board of aldermen was not intended to override the express provisions of § 59 of the charter wherein the legislature has prescribed the respective powers and duties of the board of finance and the board of aldermen. The defendants' second contention cannot be sustained.

It is apparent from what we have said that the action complained of on the part of the board of finance was unauthorized as violative of the charter provisions. In so far as the contingent account of the city is concerned, the authority of the board of finance to deal therewith is limited to that part of it which consists of the amount specifically designated and appropriated in the budget as contingent.

We are not called upon to decide whether or how "unexpected income" carried to the contingent account can be legally appropriated and expended within the same year for which an appropriation to that account has been made, in the event that the amount so appropriated is exhausted. The plaintiffs claim that should an emergency arise the power to deal with it resides in the general legislative authority of the board of aldermen, and further, as specifically set forth in § 53(z) of the charter, that the board of aldermen is empowered to do all things necessary to make effectual the powers conferred by charter and by law upon the city, except as otherwise provided. The defendants, on the other hand, point out that the board of finance is charged with the duty of executing the city's financial policy and that it must of necessity have the power to allocate municipal funds within the city's income. Since the board of finance cannot by itself authorize expenditures from money carried to the contingent account in any amount in excess of the sum appropriated under the budget to that account for the year, a situation might well arise whereunder the city,

though possessed of funds from "unexpected income" to meet a necessary emergency expenditure, would have no express authority, at least in either the board of aldermen or the board of finance, to render such surplus funds available. This situation strongly suggests the desirability of remedial legislation to guard against such a contingency by express provision in an amendment to the city's charter.

To each question in the reservation we answer "No." The defendants' motion to expunge parts of the plaintiffs' brief is denied. No costs will be taxed in this court to any party.

In this opinion the other judges concurred.