JOHN McADAMS *v.* ARTHUR T. BARBIERI, DIRECTOR OF PUBLIC WORKS FOR THE CITY OF NEW HAVEN

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued March 7—decided May 23, 1956

*George W. Crawford,* corporation counsel, with whom was *Harold M. Mulvey,* assistant corporation counsel, for the appellant (defendant).

*John J. Kinney, Jr.,* with whom was *Robert M. Taylor, Jr.,* for the appellee (plaintiff).

BALDWIN, J. This is an appeal from a judgment of the Superior Court granting, upon the application of the plaintiff, an order in the nature of a mandamus requiring the defendant, director of public works of New Haven, to reinstate the plaintiff as an employee of the city in a position from which the defendant

had discharged him. The appeal raises the question whether an amendment to the New Haven charter gave the plaintiff civil service status which prevented his summary removal by the defendant.

The defendant has assigned errors in the court's finding. Some of these he has abandoned. Those pressed involve findings of fact which are supported by the evidence or the elimination of which would not alter the result. The facts are as follows: The plaintiff, a man now in his early sixties, applied for a job in February, 1946, to the then director of public works of New Haven. The director sent him to see the chief clerk of the department of public works, who, upon learning that the plaintiff had had experience in inventory work, put him to work taking inventory of city equipment and material at the supply house. This took six weeks, during which the plaintiff worked with Capelli, a clerk already employed there. At the end of the six weeks, Capelli left the employ of the city. The plaintiff remained in sole charge of the inventory work and each year prepared and filed with the chief clerk a complete inventory of city material and equipment. He also worked part time as a street inspector. His employment continued until June 8, 1954, when the defendant discharged him.

The plaintiff did not take an examination of any kind to qualify under the civil service law and regulations for either of the jobs he performed. When he was first employed, and at all times during his employment, the charter of New Haven authorized the civil service board to prescribe rules for ascertaining the competency of applicants for position or promotion for all positions in the city government except elective officers, commissioners, officials appointed by the mayor, and superintendents, princi-

pals and teachers employed by the board of education, and required the civil service board under rules adopted by it to "hold competitive examinations as a basis for recommendations respecting any such positions or promotions." New Haven Charter, § 269 (1928), § 202 (1952) ; 13 Spec. Laws 422, § 118; 14 Spec. Laws 436, § 2; 15 Spec. Laws 962, § 2. Such rules were adopted by the board and were in effect in 1946. There was a classified position of clerk in the supply house which involved the taking of inventory. The charter also provided that any appointment made in violation of its provisions was null and void and that such a violation was a misdemeanor punishable by fine. New Haven Charter, §§ 271, 272 (1928) ; §§ 205, 206 (1952) ; 13 Spec. Laws 423, §§ 120, 121; 16 Spec. Laws 804.

Pursuant to the charter, the civil service board provided by rule that when services of a temporary character were to be rendered for a limited period, the appointing officer should inform the board, stating the duration of the period, the compensation, and other conditions of employment; that temporary successive appointments should not be made; and that no person who had served under a temporary appointment in any department should be given a second temporary appointment in the same department until three months had elapsed from the termination of the first appointment. New Haven Civ. Serv. Bd. Rule 10(1) (1911). The rules also provided for the establishment and maintenance of a separate eligible list of persons willing to accept temporary employment as clerks and that when a sufficient number of temporary clerks could not be secured from that list or from any other appropriate list, additional clerks might be employed without examination. Id., Rule 10(2). It did not appear that

at the time the plaintiff was hired the civil service board had not established and was not maintaining a list of persons eligible for temporary appointment. However, the plaintiff alleged in his complaint, and the defendant admitted in his answer, that the plaintiff "was hired as a temporary employee in the Department of Public Works . . . and was assigned to the position of Clerk in said Department, in the Supply House." The plaintiff worked as a clerk and inspector until his discharge on June 8, 1954, and was paid accordingly. He was not, however, a member of the retirement system, in which all employees in the classified service were required to participate and under which retirement at the age of seventy was compulsory.

On December 16, 1949, the board of aldermen amended the city charter effective as of February 16, 1950. New Haven Bd. of Aldm. Jour., pp. 482-489, 512-516 (1949); New Haven Charter, §§ 200-220 (1952). The amendment purported to establish a department of personnel and civil service and to provide for the appointment of a civil service board and a director of personnel, for the establishment of a classified and an unclassified service, and for the appointment and promotion of persons therein, with preference for veterans. It included a provision by virtue of which the plaintiff claims he acquired civil service status. It is this section which the defendant asserts was invalid and ineffective. Its terms will be set forth in full and discussed later in the opinion.

When the amendment was adopted, there were 287 city employees holding classified positions who had no civil service status. Many of them had been in the employ of the city over a long period of years. They had been appointed during administrations of

opposite political faiths. None of them had ever been certified by the civil service board. The position held by the plaintiff was not included in the unclassified service as set up by the amendment (§ 5). See New Haven Charter, § 211 (1952). The amendment was prepared by the corporation counsel with the approval of the mayor; it was introduced in the board of aldermen as a petition of the New Haven City Employees Association, but it was an administration measure, so-called. It was the intention of the city administration to give civil service status to the 287 employees by means of the amendment. In February, 1951, an election year, long after the amendment had become effective, the mayor sent the plaintiff and the other 286 employees purportedly affected by it a letter advising them that they had obtained full civil service status. When the defendant discharged the plaintiff, he gave as his reason for the discharge his "down the line policies for jobs for his appointees." From all of these facts the trial court concluded that the plaintiff had acquired a civil service status in a clerk's position and that his discharge was illegal.

We shall consider first the legal power of the board of aldermen to adopt the amendment and its effect with respect to the then existing provisions of the charter relating to civil service. The defendant contends among other claims that any construction of the amendment which gives to the plaintiff civil service status renders the amendment unconstitutional as class legislation. Conn. Const. Art. I § 1; U.S. Const. Amend. XIV § 1. It is a long-established rule that one cannot question the constitutional validity of a legislative enactment on the ground that it is class legislation unless he is one of the class which is claimed to suffer from dis-

crimination. The defendant is not seeking employment by the city which has been denied him because of the amendment. Consequently, he cannot raise the constitutional question of class legislation. *Carroll* v. *Socony-Vacuum Oil Co.,* 136 Conn. 49, 59, 68 A.2d 299; *Connecticut Light & Power Co.* v. *Southbury,* 95 Conn. 242, 246, 111 A. 363; 11 Am. Jur. 759, § 114. This is not to say, however, that the defendant cannot challenge the validity of the plaintiff's employment, as he does, on other grounds.

The power of the board of aldermen, by taking proper legislative procedure, to amend the charter of the city is not challenged. New Haven Charter, §§ 377, 378, 45, 11(7) (1928), §§ 50, 184, 291 (1952); 16 Spec. Laws 817; 17 Spec. Laws 335, 1227; 18 Spec. Laws 512; 23 Spec. Laws 618. It includes, among others, the power to provide by whom, when and in what manner "any of the officers, boards, directors, commissioners and employees" of the city who are not elected by popular vote shall be appointed, "their qualifications and the terms and conditions of the tenure of each," their salaries, and by whom and in what manner they shall be paid, with certain exceptions not pertinent to this case. It also includes the power "to provide for any new department, bureau or officer as may seem best for the exercise of the powers and to perform the duties given to or imposed upon" the city, and that any or all of the powers exercised by appointive officers, boards or agents may be performed by the board of aldermen in such manner as it may determine. 23 Spec. Laws 619; New Haven Charter § 291 (1952). It is readily apparent that the powers given are exceedingly broad in their scope.

Prior to the adoption of the amendment in December, 1949, the New Haven charter contained provi-

sions relating to the civil service. These were included under the title "Civil Service Board." They provided in general for the appointment by the mayor of a board of three citizens who were authorized to prescribe rules pertaining to the competency, examination, appointment, promotion and removal of city employees, with the exception of elective offices and those employed in the department of education. They required that all appointments and removals should be made in conformance with the rules of the board, and that those not so made should be null and void and constitute a misdemeanor punishable by fine. They gave to the board the power to name a secretary, who should certify to the controller lists of prospective employees eligible for appointment. New Haven Charter, §§ 268-275 (1928). In adopting the amendment in 1949, the board of aldermen did not expressly repeal these provisions. Were they repealed by implication? When a later statute covers the whole subject to which it relates, it will be held to repeal by implication all prior statutes on the matter. *Hutchison* v. *Hartford,* 129 Conn. 329, 332, 27 A.2d 803; *State ex rel. Reiley* v. *Chatfield,* 71 Conn. 104, 112, 40 A. 922; *Fair Haven & W.R. Co.* v. *New Haven,* 75 Conn. 442, 446, 53 A. 960; *Hartford* v. *Hartford Theological Seminary,* 66 Conn. 475, 484, 34 A. 483. This is also true if the later statute is necessarily repugnant to the former. *Landry* v. *Personnel Appeal Board,* 138 Conn. 445, 451, 86 A.2d 70; *Lake Garda Co.* v. *LeWitt,* 126 Conn. 588, 589, 13 A.2d 510.

The amendment adopted in 1949 is designated "Charter Amendment concerning a Department of Personnel and Civil Service." It contains much more than § 9, which is the section purporting to "cover in" employees who did not have civil service status.

New Haven Bd. of Aldm. Jour., p. 482 (1949). It creates a department of personnel and civil service which is to consist of a civil service board, a personnel director, and such other employees as shall be approved by the board of finance. It provides in detail for the organization of this board, the appointment of a personnel director, and his duties. It establishes a classified and an unclassified service, directs the preparation of classification and pay plans, grants a veterans' preference in city employment, and contains an antidiscrimination provision. It has several provisions which were not present in the earlier legislation. It incorporates a section making appointment or removal in violation of the provisions of the amendment null and void and punishable as a misdemeanor. This section is substantially identical with the like provision in effect at the time of the amendment. The entire field of civil service is covered by the amendment with wider comprehension and greater detail than are to be found in the earlier legislation. Not only that, but many of its provisions are repugnant to those contained in that legislation. The amendment was retained in a subsequent revision of the New Haven charter. New Haven Charter, §§ 200-220 (1952). It manifests a clear intent to repeal all civil service legislation embodied in the New Haven charter at the time the amendment became effective. It demonstrates a legislative purpose to start afresh. We conclude that the board of aldermen had the necessary power under the charter to adopt the amendment of December 16, 1949, and that the amendment repealed by implication the earlier charter provisions concerning the civil service.

It is presumed, unless a contrary intent clearly appears, that legislative enactments are intended to

operate prospectively. *Massa* v. *Nastri*, 125 Conn. 144, 146, 3 A.2d 839; *Rogers* v. *County Commissioner*, 141 Conn. 426, 429, 106 A.2d 757. There is nothing in the instant case to show a contrary intent. When the board of aldermen on December 16, 1949, adopted the amendment which became effective on February 16, 1950, there were in the employ of the city 287 persons without civil service status. It is fair to assume that there were other city employees who did have civil service status, and still others who had been provisionally appointed and were in the process of acquiring it under the rules. Section 9 of the amendment purported to deal with the existing situation concerning city employees and with their treatment in the future. The plaintiff, one of the 287 employees without civil service status, was either "covered in"—speaking colloquially, "frozen in"—or he was not, depending on the intent expressed by § 9. Provisions, similar to § 9, "covering in" public employees are common in civil service legislation. They have been upheld by the courts. One of the reasons given is that these previously unclassified employees, having worked for the city for a period of time, can be deemed qualified by their experience to continue in their respective positions. 3 McQuillin, Municipal Corporations (3d Ed.) § 12.134; *Ricker* v. *Village of Hempstead*, 290 N.Y. 1, 5, 47 N.E.2d 417; *Bente* v. *Department of Water & Power*, 45 Cal. App. 2d 589, 591, 114 P.2d 699.

We shall now consider whether the board of aldermen intended that § 9 of the amendment should include the plaintiff's situation. The question for the court in construing legislation is never What did the legislature actually intend? but What intention has it expressed? *Bailey* v. *Mars*, 138 Conn. 593, 598, 87 A.2d 388, and cases cited. Intent is to be as-

certained from the language used, if it is plain and unambiguous; or, if it is not, by considering the legislation in the light of all of its provisions, the object which it seeks to accomplish, the pre-existing legislation upon the same subject matter, and all other relevant circumstances. *Landry* v. *Personnel Appeal Board,* 138 Conn. 445, 447, 86 A.2d 70, and cases cited. The words used must be accorded their commonly accepted meaning. General Statutes § 8890; *Lampson Lumber Co.* v. *Rosadino,* 141 Conn. 193, 197, 104 A.2d 362, and cases cited. Section 9 reads as follows: "All non-professional workers including employees of any board or commission holding permanent positions in the service of the city who were appointed at least one year previous to the effective date of this amendment, whose positions are included in the classified service by the terms of this amendment, shall immediately become members of the classified service with full civil service status. All persons appointed under civil service rules prior to the effective date of this amendment, are hereby confirmed as having full civil service status. All persons appointed provisionally within one year of the effective date of this amendment shall be examined by the civil service board within ninety (90) days subsequent to the effective date of this amendment and shall be appointed or rejected according to the terms of this amendment." New Haven Bd. of Aldm. Jour., p. 487 (1949); see New Haven Charter § 215 (1952).

It will be noted that § 9 contains three sentences. Obviously, the plaintiff is not comprehended by the last sentence, which deals with persons provisionally appointed within one year. He does not fall within the terms of the second sentence, because he was not appointed under civil service rules and therefore

had no civil service status which could be "confirmed." If the plaintiff's case is embraced by the amendment at all, he must meet the qualifications prescribed by the first sentence, and that sentence must be construed to express a legislative intent to include employees who had no civil service status. The plaintiff was a nonprofessional worker and had been in the service of the city more than a year. The crux of the matter is whether he was, at the time of the adoption of § 9, "holding" a "permanent position" to which he had been "appointed." These are the crucial words. The common meaning of the word "appoint" is "[t]o assign, designate." Webster's New International Dictionary (2d Ed.). The word "appoint" also connotes authority to place in office. But the position to which the plaintiff was appointed, speaking legally, was not an office but merely an employment. Employees can be said to have been assigned or designated to do a certain job. *People ex rel. Akin* v. *Loeffler,* 175 Ill. 585, 601, 51 N.E. 785.

The defendant's most cogent argument is that the plaintiff was not "holding" a "permanent" position. This is true in the sense that he was not a permanent appointee because he had not qualified under the previously existing civil service regulations. See *Detoro* v. *Pittston,* 344 Pa. 254, 260, 25 A.2d 299; *Kaeble* v. *Mayor of Chicopee,* 311 Mass. 260, 268, 41 N.E.2d 49. The court, however, has found, and it has not been challenged, that the position of clerk occupied by the plaintiff existed in 1946 when he was first assigned to it and that it continued until February, 1950, when the so-called "freeze" amendment became effective. New Haven Civ. Serv. Bd. Rules 2(1), 4 (1911). The rules of the civil service board contain no definition of the term "permanent position," but they define the term "position," when

used by itself, as referring "to any classified office, position or employment." Id., Rule 1(7). The chapter of the General Statutes establishing a merit system for state employees uses the term "permanent position" as meaning "any position in the state service which requires or which is expected to require the services of an incumbent without interruption for a period of more than six months." General Statutes § 309. This aptly describes the plaintiff's position as clerk in the New Haven department of public works. The trial court's conclusion that the place or employment to which the plaintiff was assigned in 1946 was a permanent position cannot be successfully challenged as illogical or illegal. *McGillicuddy* v. *Civil Service Commission,* 133 Cal. App. 782, 786, 24 P.2d 942; *Powers* v. *Board of Public Works,* 216 Cal. 546, 553, 15 P.2d 156.

Can it be said, however, that the plaintiff was "holding" a permanent position? If § 9 contained no more than its first sentence, we would have no hesitancy in deciding that the term "holding permanent positions" meant legally holding them under the civil service regulations. *People ex rel.* v. *Chew,* 68 Colo. 158, 159, 187 P. 513. Legislative intent, however, is not to be found in an isolated sentence. The enactment must be examined in its entirety and its parts reconciled and made operative so far as possible. *Hutchison* v. *Board of Zoning Appeals,* 140 Conn. 381, 385, 100 A.2d 839; *State ex rel. Chatlos* v. *Rowland,* 131 Conn. 261, 265, 38 A.2d 785; *Lake Garda Co.* v. *LeWitt,* 126 Conn. 588, 592, 13 A.2d 510; *State* v. *Dorau,* 124 Conn. 160, 168, 198 A. 573. If we construe "holding permanent positions," in the first sentence of § 9, to mean occupying jobs as employees by virtue of the civil service regulations and with full civil service status, the qualifications con-

tained in the first sentence of § 9 would be the same as those contained in the second, and the first sentence would be meaningless and superfluous. It is a cardinal rule of statutory construction that, if possible, no part of a legislative enactment is to be treated as insignificant and unnecessary. *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 211, 91 A.2d 773; *Niedzwicki* v. *Pequonnock Foundry,* 133 Conn. 78, 82, 48 A.2d 369. Courts must presume that the legislature had a purpose for every sentence, clause or phrase in a legislative enactment. *Lampson Lumber Co.* v. *Rosadino,* 141 Conn. 193, 197, 104 A.2d 362, and cases cited; Crawford, Statutory Construction, p. 348, § 200; 50 Am. Jur. 362. Statutes must be construed if possible so that their purpose is not thwarted by the construction. *Northeastern Gas Transmission Co.* v. *Collins,* 138 Conn. 582, 592, 87 A.2d 139; *Bailey* v. *Mars,* 138 Conn. 593, 598, 87 A.2d 388; *State ex rel. Heimov* v. *Thomson,* 131 Conn. 8, 12, 37 A.2d 689; *Duparquet, Huot & Meneuse Co.* v. *Maguire,* 114 Conn. 69, 71, 157 A. 411; *McKay* v. *Fair Haven & W.R. Co.,* 75 Conn. 608, 611, 54 A. 923.

The parties concede by the pleadings that the plaintiff was hired as a temporary employee in a clerk's position. It is not disputed that he performed the duties it entailed and received the compensation provided for it. He was not an interloper. By analogy, if the position had been an office, the plaintiff would have been a de facto, although not a de jure, holder of it. *State ex rel Comstock* v. *Hempstead,* 83 Conn. 554, 557, 78 A. 442; *Brown* v. *O'Connell,* 36 Conn. 432, 449. He could have performed the duties of the office, and his acts would have bound the city. *State ex rel. Waterbury* v. *Martin,* 46 Conn. 479, 481. The charter at the time the plain-

tiff was appointed provided that an appointment made in violation of it was null and void, and the controller was charged with the responsibility of enforcing conformance with the civil service provisions. New Haven Charter, § 271 (1928). It is true that an employment not in conformance with civil service law and regulations can never become lawful by virtue of the unlawful occupation of a permanent position. *Howe* v. *Civil Service Commission,* 128 Conn. 35, 37, 20 A.2d 397. Furthermore, the plaintiff's invalid appointment could not be made valid ab initio by subsequent legislative enactment. *Montgomery* v. *Branford,* 107 Conn. 697, 705, 142 A. 574; *Shay's Appeal,* 51 Conn. 162, 164. In the instant case, however, the plaintiff relies, not on his occupancy of the position under his original appointment to it, but on the amendment which purports to "freeze" him in. This amendment does not attempt to make the plaintiff's appointment valid ab initio. Instead, it recognizes that the plaintiff and the other 286 employees were illegally occupying positions in the civil service, and, by virtue of the fact that they had occupied the positions and performed the duties required, for more than one year, it gives them civil service status.

It might be argued that the first and second sentences of § 9 both apply to employees who had civil service status and that two sentences were used to describe the same employees out of an abundance of caution. This proposition is untenable not only for the reasons already given heretofore but for another forceful one. The first sentence sets up three separate qualifications—(1) nonprofessional worker, including employee of any board or commission, (2) holding a permanent position for more than one year, (3) whose position is included in the classified service by the terms of the amendment. Those who

have these qualifications "shall immediately become" members of the classified service. The second sentence, on the other hand, sets forth one qualification —persons appointed under civil service rules prior to the date of the amendment "are hereby confirmed" as having full civil service status. These two sentences plainly refer to two different groups of city employees.

Whether the adoption of the amendment was an act of political expediency and whether the defendant's act in discharging the plaintiff was due solely to partisan political motives are questions which are not decisive of the case. It is not the court's province to assay the legislative policy of the amendment. That is a matter for legislative determination alone. It is true that civil service policy favors appointments and promotions in the public service on the basis of tested qualifications. *State ex rel. Chernesky* v. *Civil Service Commission*, 141 Conn. 465, 469, 106 A.2d 713. The extent to which that policy is followed depends upon the will and purpose of the legislative officers exercising the powers which the city charter gives to them. When there is adequate statutory authority to do so, the legislative body of a city can always change the rules with reference to the civil service. See *Cassidy* v. *Tait,* 140 Conn. 156, 162, 98 A.2d 808; *State ex rel. Anderson* v. *Barlow,* 235 Wis. 169, 183, 292 N.W. 290. The sole power and duty of the court is to decide the legal issues arising out of the adoption of the amendment. *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 111, 90 A.2d 862; *Landry* v. *Personnel Appeal Board,* 138 Conn. 445, 451, 86 A.2d 70.

The defendant makes one further argument which requires brief comment. Because the plaintiff was

never a member of the pension system, as all civil service employees are required to be, he was not subject to compulsory retirement at the age of seventy as provided in the pension law. New Haven Charter, §§ 289, 278 (1952). It is therefore claimed by the defendant that the plaintiff could hold his position indefinitely. This is not a valid claim, because the board of aldermen and the civil service board have adequate power under the charter to make provisions for terminating, in good faith, the employment of an incumbent of a classified position whenever his services have become unsatisfactory or unnecessary. See New Haven Charter, §§ 50, 184, 202, 203, 204, 208, 291 (1952); *State ex rel. Hartnett* v. *Zeller*, 135 Conn. 438, 441, 65 A.2d 475; 10 Am. Jur. 933, § 12.

There is no error.

In this opinion INGLIS, C. J., and WYNNE, J., concurred.

DALY, J. (dissenting). This amendment should be examined with great strictness, since its purpose was to undermine the civil service by freezing into permanent positions almost 300 persons who failed to meet the qualifications which had been demanded of those already within the system. In *Howe* v. *Civil Service Commission,* 128 Conn. 35, 38, 20 A.2d 397, we quoted with approval the following from *Matter of Sheridan* v. *Kern,* 255 App. Div. 57, 63, 5 N.Y. S.2d 336: "Any method which results in improperly placing in permanent positions those who obtain temporary employment is a reversion to the [properly] condemned spoils system and is destructive of much that has been accomplished in the way of civil service reform." Before the amendment became

effective on February 16, 1950, a provision of the New Haven charter required that all appointments be made in conformance with the rules prescribed by the civil service board. It was also provided that every appointment made in violation of that provision "shall be null and void," and that any violation of any of the charter provisions relating to civil service and appointments thereunder would constitute a misdemeanor punishable by a fine not exceeding $500. New Haven Charter, §§ 270, 271, 272 (1928). These charter provisions had been in effect since 1899. 13 Spec. Laws 423, §§ 119, 120, 121. Rules were prescribed by the civil service board, and the plaintiff was, admittedly, never appointed to any position in conformance with them. The amendment contains provisions, substantially identical with the previous ones, making appointments in violation of it null and void and punishable as a misdemeanor. New Haven Bd. of Aldm. Jour., pp. 482, 483 (1949); New Haven Charter, §§ 204, 205, 206 (1952).

As stated in the opinion of the majority, the plaintiff alleged in his complaint, and the defendant admitted in his answer, that in March, 1946, the plaintiff "was hired as a temporary employee in the Department of Public Works . . . and was assigned to the position of Clerk in said Department, in the Supply House." The plaintiff did not allege that he was appointed to any position. He did not allege, and the trial court did not find, that at the time he "was hired as a temporary employee" there was a vacancy in the position of clerk in the supply house. Moreover, the court found that it does not appear that at the time of the plaintiff's hiring there was a vacancy of an emergency character in a position in the competitive class and it was not practicable either to secure a person by certifica-

tion from an eligible list or to conduct an examination, in the absence of such a list, to meet the emergency. As there was no vacancy in the position of clerk in the supply house at the time the plaintiff commenced work, and as his employment was merely temporary, the temporary appointment could not ripen into a permanent civil service position. *State ex rel. Curran* v. *Golden,* 116 Conn. 302, 306, 164 A. 640.

The majority concede that the plaintiff was not "holding" a "permanent" position, "in the sense that he was not a permanent appointee because he had not qualified under the previously existing civil service regulations." In a civilized community, "holding a position" means lawfully holding it. *People ex rel. Hannan* v. *Board of Health,* 153 N.Y. 513, 518, 47 N.E. 785. The plaintiff was wrongfully and unlawfully in the employ of the city of New Haven during all of his employment and at the time the amendment became effective. Even if the words of the amendment were such that, literally read, it would include one wrongfully retaining a position, it would not be reasonable so to construe it. Whatever may have been the purpose of the first sentence of § 9 of the amendment, it certainly was not to perpetuate wrongful tenure of a position. *People ex rel.* v. *Chew,* 68 Colo. 158, 159, 187 P. 513.

The charter of New Haven is a "public act." *New Haven Taxpayers Research Council, Inc.* v. *DePalma,* 137 Conn. 331, 337, 77 A.2d 338. It is unreasonable to declare that the expressed intention of the legislative body in passing the amendment was to include one who was in the employ of the city in direct violation of the civil service provisions of the charter and without any right to his employment, thereby working public mischief in undermining civil serv-

ice. A statute should receive a sensible construction, in conformity to reason and justice, unless the language used is so clear as to prevent it. It is to be presumed that the legislative body did not intend to work public mischief. *People ex rel. Hannan* v. *Board of Health,* 153 N.Y. 513, 518, 47 N.E. 785. When one construction leads to public mischief which another interpretation will avoid, the latter is to be favored unless the terms of the law absolutely forbid. *Rowland* v. *Hayes,* 124 Conn. 129, 139, 198 A. 337; *Bridgeman* v. *Derby,* 104 Conn. 1, 8, 132 A. 25. It is not and cannot be claimed that the terms of the amendment absolutely forbid a construction which will avoid public mischief.

In the opinion of the majority, in support of the construction placed upon the first sentence of § 9 of the amendment, it is stated that the definition of the words "permanent position" in § 309 of the General Statutes aptly describes the plaintiff's position and therefore the trial court's conclusion that the place of employment to which the plaintiff was assigned in 1946 was a permanent position cannot be successfully challenged as illogical or illegal. Section 309 provides: "The following terms, when used in this chapter, shall have the following meanings unless the context shall otherwise indicate: (1) 'State service' shall mean any office or position of trust or employment in the service of the state, but not of local governmental subdivisions thereof, for which service compensation is paid; . . . (6) 'permanent position' shall mean any position in the state service which requires or which is expected to require the services of an incumbent . . . for a period of more than six months; . . . ." It is clear that the definition of "permanent position" in § 309 has no conceivable application here and can furnish no sup-

port for determining that the plaintiff was, in 1946 or at the time the amendment became effective, holding a permanent position in the employ of the city of New Haven, a local governmental subdivision of the state.

The opinion of the majority completely ignores the well-recognized rules of construction stated above and bases the holding upon the reasoning that if the words "holding permanent positions," in the first sentence of § 9 of the amendment, are construed to mean "lawfully holding permanent positions," that sentence and the one following it would, in effect, have the same meaning, and consequently one of them would be superfluous. It is true that the enactment must be examined as a whole and in such a manner as to reconcile all of its provisions so far as possible. *Hutchison* v. *Board of Zoning Appeals*, 140 Conn. 381, 385, 100 A.2d 839. Nevertheless, where, as in the instant case, there are compelling reasons why the principle cannot be followed, the sentence in question should be treated as superfluous, void or insignificant. *Niedzwicki* v. *Pequonnock Foundry*, 133 Conn. 78, 82, 48 A.2d 369. Here the compelling reasons why the principle cannot be followed, and for treating the first sentence of § 9 of the amendment as superfluous, void or insignificant, are: (1) The temporary employment of the plaintiff in direct violation of the law and regulations could not ripen into a permanent civil service position. (2) The words "holding permanent positions" are not ambiguous, since they can only mean "lawfully holding permanent positions." (3) To hold otherwise works public mischief.

In this opinion O'SULLIVAN, J., concurred.